**Frank DEMAIO, Plaintiff,**

**v.**

**Louis F. MANN, Supt., et al., Defendants.**

No. 93–CV–185.

United States District Court,
N.D. New York.

Feb. 20, 1995.

Frank DeMaio, pro se.

Dennis Vacco, Atty. Gen. of N.Y., Mary Ellen Clerkin, Asst. Atty. Gen., for defendants.

## OPINION

KAPLAN, District Judge.[1]

This is Section 1983 action by an inmate at the Attica Correctional Facility of the New York State Department of Correctional Services against various officers and officials at the Shawangunk Correctional Facility, where plaintiff formerly was incarcerated. The matter is before the Court on cross-motions for summary judgment.

The amended complaint and some of the voluminous motion papers contain references to a host of grievances by the plaintiff. Plaintiff's motion for summary judgment, however, contains also a motion for voluntary dismissal of all but two of his claims and dismissal as to all defendants other than Mann, Levine, Vitaris, Freer, Turso, Yambay and Fredenburgh. He acknowledges that he cannot substantiate the other claims.

■ The two matters that remain relate to plaintiff's claims that he was improperly confined in "strip plexiglass deprivation cells" from April 4 through April 25 and from August 30 through September 9, 1992.

### Facts [2]

**The April Incident**

On April 4, 1992, plaintiff was housed in the Special Housing Unit ("SHU") at Shawangunk in cell SHU–1 when an incident involving COs Freer and Vitaris took place. Plaintiff claims that Vitaris spit on him and that Vitaris and Freer then made a fictitious misbehavior report against him to retaliate for grievances plaintiff previously had filed.[3] Sergeant Yambay had plaintiff put in cell SD–1, the so-called strip plexiglass cell, where he remained until April 25. During a hearing on the misbehavior report before Deputy Superintendent Fredenburgh, plaintiff claimed that the incident must have been recorded on video tape because a surveillance camera was in the area. Fredenburgh, ac-

cording to plaintiff, refused to view the alleged tape, stating that no tape had been recorded. Plaintiff was found guilty and sentenced to sixty days keeplock and sixty days loss of privileges to run consecutively with his existing SHU sentence.

Plaintiff nowhere describes the strip plexiglass cell. He does, however, assert in a declaration that Vitaris and Freer deprived him of meals for the two day period, April 4–5. That assertion is supported also by a handwritten affidavit or declaration of inmate Soto contained in docket item 37.

Not surprisingly, the defendants' version of these events is different in most respects. According to defendants, the incident began when CO Freer ordered plaintiff to remove a sheet from the bars of his cell. Plaintiff became abusive and spit on Freer. Plaintiff then was charged with misbehavior and moved to cell SD–1. (Def. 10(J) ¶¶ 31–34; Clerkin Aff. Ex. F [part]) The misbehavior report indicates that plaintiff was moved to SD–1 "(plastic)" on orders of a Lieutenant Cheers, who is not a party to this action.

The defendants have provided also a rough transcription of the hearing on the misbehavior report, which began on April 10 and continued on April 17, 1992. (Clerkin Aff.Ex. G) The transcript confirms that plaintiff requested that the video tape that he assumed to exist be viewed. An exchange between Fredenburgh and Yambay during the April 17 portion of the hearing indicates that the incident was not recorded.

Defendants have submitted evidence regarding the alleged plexiglass strip cell. The SHU at Shawangunk is split in the middle. Cells run in corridors to the left and the right, with a console area in the center. The right corridor has the SHU or "SH" designation; the left corridor has the "SD" designa-

---

1. Honorable Lewis A. Kaplan, United States District Judge for the Southern District of New York, sitting by designation.

2. Plaintiff's evidence on these motions includes a purportedly verified notice of motion and motion (docket item 31), purported affidavits (docket items 37, 40), and purported affidavits of Geraldo Soto (included in item 37, 47). All state that they are sworn under penalty of perjury. We

therefore treat them as declarations pursuant to 28 U.S.C. § 1746.

3. Although plaintiff had arrived at Shawangunk on March 11, 1992, less than a month earlier, he already had filed at least two grievances, the second being against CO Freer on April 1, 1992. (Copies included in docket item 37)

tion. The cells are physically identical. (Mutz Aff. ¶¶ 19–23)

Cells SD–1 and SD–8 have plexiglass shields on the cell doors, and the other cells may be fitted with such shields if necessary. Plexiglass shield orders are issued when an inmate engages in activities such as throwing food or bodily materials out of his cell or spitting on staff. Their purpose is to prevent such actions, but they do not stop fresh air from circulating into the cell. (Hoffman Aff. ¶¶ 9–10)

It appears that plaintiff was kept in cell SD–1 from the time he was accused of spitting on CO Freer through the April 17 disposition of the misbehavior report on which he was found guilty. He was continued there from April 19 through April 25, 1992 pursuant to a Cell Shield Order issued by Deputy Superintendent Rivera because there was no other cell available. (Id. ¶ 11)

Significantly, defendants have not addressed plaintiff's claim that Vitaris and Freer withheld food from plaintiff for two days. That allegation therefore is undisputed.

**The August Incident**

Another incident took place on August 30, 1992. According to plaintiff, COs Vitaris and Turso and Sergeant Yambay moved him from cell SD–4 to SD–6 and destroyed or stole various articles of plaintiff's personal property. A few hours later, Vitaris allegedly charged plaintiff with throwing a cup of milk at him. Plaintiff claims that he thereupon was put into cell SD–8, which he also characterizes as a strip plexiglass deprivation cell. He allegedly was held there without exercise or fresh air, and kept naked, for twelve days during which unspecified defendants allegedly urinated in his beverages and gave him empty food trays. He claims also that he was improperly denied the right to call a witness at the hearing on the misbe-

havior report and that no finding was made on the complaint because he was transferred to another institution before the hearing concluded.

Again, the defendants tell a very different story. In their version, plaintiff on August 30 threw milk and bread pudding onto the gallery floor in front of his cell, splashing CO Vitaris, and threatened Vitaris, resulting in Vitaris issuing a misbehavior report.[4] A hearing was commenced on September 2 at which plaintiff's request to call inmate Soto in his defense was rejected on the ground that Soto allegedly was incapable of testifying.

Defendants admit that plaintiff was kept in an SD cell with a plexiglass shield during the dates in question and that he was denied out-of-cell activities, including showers and outdoor recreation, through September 6 pursuant to a deprivation order issued on August 30. (Hoffman Aff. ¶¶ 14–15) The deprivation order recited that it was issued because plaintiff constituted a safety or security threat in that he had thrown food at and threatened a member of the staff. (Id. Ex. J) It was issued by Deputy Superintendent Rivera and renewed by others, the names of all of whom are illegible from the documents submitted. (Id.) These orders all terminated by September 7. Defendants assert that plaintiff was kept in the SD cell until he was transferred on September 9 because no other cell was available and that plaintiff refused recreation on September 7 and 8. Defendants assert that plaintiff would not have been deprived of clothing, food or toilet paper during this period, as he alleges. (Hoffman Aff. ¶ 17)

**Discussion**

■ Plaintiff does not articulate any legal theory in support of his claim. We nevertheless construe his submission generously in his favor.[5] Several possible claims appear.

---

**4.** Another misbehavior report was issued on the same date by CO Turso on the basis of Turso having found in plaintiff's cell a cartoon picture of a beast with horns with Superintendent Mann's name written below the cartoon. Turso charged plaintiff with "written harassment" in violation of institutional rules. It is difficult to see how plaintiff's personal possession of such a cartoon harassed anyone. Inasmuch as this

charge was dropped when plaintiff was transferred, we need not address the issue.

**5.** *See Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam); *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam).

## Shield Orders—Procedural Due Process

 First, plaintiff may be complaining that his confinement in what he terms strip plexiglass deprivation cells without notice and a hearing deprived him of procedural due process.[6] The plexiglass confinement took place pursuant to 7 N.Y.C.R.R. § 305.6, which permits the use of cell shields for good cause. Plaintiff, however, had no protected liberty interest in confinement in an unshielded cell. *Young v. Scully*, 1993 WL 88144, *3 (S.D.N.Y.1993).

## Shield Orders—Cruel and Unusual Punishment

 Next, plaintiff may be contending that confinement in shielded cells violated the Eighth and Fourteenth Amendments. The defendants' showing that the shielded cells were identical to the standard SHU cells in which plaintiff previously was housed (as to which no complaint is made) save for a plexiglass shield of the type described is undisputed, even in plaintiff's subsequent filings. We hold that the addition of the plexiglass shield, which did not interfere with air circulation, did not inflict cruel and unusual punishment on the plaintiff. We see no credible argument that the use of such a shield involves the "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976), or violates "evolving standards of decency that mark the progress of a maturing society," *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). Regard must be had too for the legitimate interest of the State in protecting correction officers from being pelted with food and human waste.

## Food and Clothing Deprivation

The claims of food and clothing deprivation are considerably more troublesome. It is undisputed that COs Vitaris and Freer withheld food from plaintiff for two days in April 1992. Plaintiff states also that food and clothing were withheld for twelve days in August and September, although he does not directly say by whom, and that unspecified "defendants" urinated in his beverages during that period. (Docket item 31, at 7; item 37 ¶13) Defendants' only response to the latter accusation is Captain Hoffman's affidavit, which asserts that plaintiff "would *not* have been deprived" of food or clothing under the deprivation order during the August–September period.

 The Constitution "does not mandate comfortable prisons." *Rhodes*, 452 U.S. at 349, 101 S.Ct. at 2400. It does require that prisoners receive adequate food and clothing. *E.g., Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984); *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir.1983); *Williams v. Coughlin*, 875 F.Supp. 1004 (W.D.N.Y.1995). Hence, the alleged food and clothing deprivations raise two issues: whether they violated the Eighth and Fourteenth Amendments and whether they deprived plaintiff of his right to procedural due process.

 In order to establish a cruel and unusual punishment claim, the plaintiff must demonstrate that "the deprivation [is] ... objectively, 'sufficiently serious'" and that the responsible prison official acted with a sufficiently culpable state of mind. *Farmer v. Brennan*, —— U.S. ——, ——, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994), *quoting Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991). We have no doubt that deprivation of food and clothing for twelve consecutive days in August–September would be "sufficiently serious" to trigger Eighth Amendment concerns, but there is an issue of fact as to whether that occurred. While it is undisputed that a two day deprivation of food occurred in April, plaintiff is not entitled to summary judgment on that claim, as it is unclear that the two day deprivation was "sufficiently serious" to warrant summary judgment for the reasons recently stated by Judge Curtin in *Williams v. Coughlin*, 875 F.Supp. 1004 (W.D.N.Y. 1995).[7]

---

6. Since the cells were identical in all respects save the shield, plaintiff's movement from one cell to another manifestly implicated no liberty interest.

7. Moreover, as all inferences must be drawn against the movant on a motion for summary judgment, it is debatable whether we properly may infer that Vitaris and Freer deprived plain-

The defendants contend that they are entitled to summary judgment dismissing the food and clothing deprivation claims because plaintiff does not identify any specific defendant who allegedly was responsible for those conditions of confinement. They point, among other things, to the fact that plaintiff claims, without any specificity, that "[d]efendants were urinating in [his] beverages and giving [him] empty food trays ..." in the August–September 1992 period. Plaintiff does not even assert that it was the defendants who put him in the cell and denied him exercise and fresh air.

█ In order to make out a Section 1983 case, plaintiff must, as defendants say, establish personal involvement by each defendant in the acts complained of. *E.g., Al–Jundi v. Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989).

Plaintiff charges Freer and Vitaris with depriving him of food in April. He alleges no personal involvement by any other defendants in that episode.

█ Plaintiff's claims of personal involvement with respect to the August–September incident are thin. He specifically, if ambiguously, implicates Vitaris. (Docket item 37, ¶ 14) The record indicates also that defendants Vitaris, Yambay and Turso were involved in at least some of the events of that period. Nonetheless, in seeking summary judgment of dismissal, it is defendants' burden to establish the absence of any genuine issue of fact. They have submitted no affidavits by anyone with personal knowledge of what actually took place in the SHU during the period August 30 through September 9. Indulging, as we must, all reasonable inferences in favor of the party resisting summary judgment, we conclude that there are issues of fact as to the personal involvement of defendants Vitaris, Yambay and Turso. There is no suggestion, however, that defendants Mann, Levine, Fredenburgh and Freer had any personal involvement in the events of that period.

Accordingly, the cross-motion for summary judgment dismissing the cruel and unusual punishment claims based on the alleged deprivation of food and clothing is granted as to defendants Mann, Levine and Fredenburgh, granted as to Yambay and Turso as to the April incident, granted as to Freer with respect to the August–September incident, and denied in all other respects. This claim therefore survives against Vitaris as to both incidents, Freer as to the April incident, and Turso and Yambay as to the later incident.

If and to the extent plaintiff was deprived of food and clothing, he may have been deprived also of a protected liberty interest without due process of law. Inasmuch as there are issues of fact as to what took place in August–September and as to the seriousness of and the reason for the deprivation in April, we deny the cross-motions for summary judgment on this issue as to those defendants who may have been personally involved.

**Deprivation Orders—Procedural Due Process**

█ Plaintiff was deprived of out-of-cell activities and certain privileges in both April and August–September under orders issued pursuant to 7 N.Y.C.R.R. § 305.2. As Judge Martin held in *Young v. Scully*, 1993 WL 88144, Section 305.2 is sufficiently definite to create a liberty interest in the inmate, although due process is satisfied if the inmate is provided with notice and an opportunity to make a statement to the official responsible for the order. *See also, e.g., McCann v. Phillips*, 864 F.Supp. 330, 338–40 (S.D.N.Y. 1994). Plaintiff does not assert that he was not afforded these rights. In any case, there is no suggestion that any of the defendants was personally responsible for any lack of notice or deprived plaintiff of the right to make a statement. In consequence, the cross-motion for summary judgment as to this aspect of the claim is granted.

**Disciplinary Hearings—Procedural Due Process**

█ Plaintiff complains that Mr. Fredenburgh, who conducted the hearing on the

tiff of food on that occasion with the requisite state of mind, although their failure to submit affidavits on the motion makes this a close ques-

tion. As we deny plaintiff's motion for summary judgment on this issue on other grounds, we need not decide this point.

April 4 misconduct report, improperly refused to view the alleged video tape and that Mr. Levine, who conducted the September hearing, improperly refused to call inmate Soto as a witness. We assume the contention is that he was denied procedural due process.

Plaintiff has failed to submit any competent evidence that the alleged video tape ever existed. The hearing record indicates that the video camera was used for surveillance purposes and that the video signal was recorded only if a particular request was made. Since there was no evidence that any tape of the incident ever existed, Fredenburgh's actions did not deprive plaintiff of any constitutional right.

The claim that Levine improperly failed to call inmate Soto at the hearing on the August 30 misbehavior reports is equally without merit. Inasmuch as the hearing was not concluded as a result of plaintiff's transfer to another institution, no finding ever was made on the charges in the misbehavior reports, and no sanction was imposed on the basis of any such finding, we find no infirmity.

**False Retaliatory Misbehavior Report**

As noted, plaintiff was found guilty of spitting on CO Freer in April 1992 and sentenced to sixty days keeplock and sixty days loss of privileges. He denies under oath that he was guilty of the conduct alleged and asserts in substance that Freer concocted the charge against him to retaliate for plaintiff's filing of grievances against him and others.

As we noted not long ago, recent decisions by the Second Circuit indicate that the filing of false disciplinary charges against an inmate by correction officials may deprive the inmate of the right to substantive due process, at least where the officials act in retaliation for the exercise of constitutionally protected rights and perhaps in any case. *McCorkle v. Walker*, 871 F.Supp. 555, 559 (N.D.N.Y.1995), citing *Grillo v. Coughlin*, 31 F.3d 53, 56 (2d Cir.1994); *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir.1994); *Franco v. Kelly*, 854 F.2d 584 (2d Cir.1988).

Here, there is an issue of fact as to whether the charges that COs Freer and Vitaris lodged against plaintiff were false. In consequence, both plaintiff's motion for summary judgment and the cross-motion of COs Freer and Vitaris must be denied. Inasmuch as plaintiff has submitted no competent evidence implicating any of the other defendants in the alleged filing of false charges, the cross-motion by the other defendants with respect to this incident is granted.

**Cell Search and Loss of Property**

▆▆▆▆ Plaintiff complains about the search of his cell on April 4, 1992 and the alleged destruction and loss of personal property.

Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights. *E.g., Hudson*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393; *Payne v. Axelrod*, 871 F.Supp. 1551, 1555 (N.D.N.Y.1995). It is well established, moreover, that plaintiff's allegation of loss of property does not state a claim upon which relief may be granted in view of the availability to plaintiff of a claim against the State of New York in the State Court of Claims. *Daniels v. Williams*, 474 U.S. 327, 329, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986); *Hudson*, 468 U.S. at 533, 104 S.Ct. at 3203–04; *Parratt v. Taylor*, 451 U.S. 527, 543, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981); *Forman v. Coughlin*, 1994 WL 708150, *1 (S.D.N.Y.1994).

**Conclusion**

For the foregoing reasons, plaintiff's motion for summary judgment is denied in all respects. His motion to discontinue all claims other than those relating to the April and August 1992 incidents is granted and those claims are dismissed with prejudice.

Defendants' cross-motion for summary judgment dismissing the action is denied with respect to the following claims:

(a) the claims that Freer and Vitaris inflicted cruel and unusual punishment on and deprived plaintiff of procedural due process by withholding food from him on April 4 and 5, 1992;

(b) the claims that Vitaris, Yambay and Turso inflicted cruel and unusual punishment on and deprived plaintiff of procedural due process by withholding food and clothing

from him during the period August 30 through September 9, 1992; and

(c) the claim that Freer and Vitaris deprived plaintiff of substantive due process by lodging a false charge against him on April 4, 1992.

The motion for summary judgment dismissing the action is granted in all other respects.

Inasmuch as this ruling completely disposes of this action insofar as it is brought against defendants Mann, Levine and Fredenburgh and the issues involving those defendants are quite distinct from those that remain against the others, we conclude, pursuant to Fed.R.Civ.P. 54(b), that there is no just reason for delay and direct the entry of judgment dismissing the action as to defendants Mann, Levine and Fredenburgh.

SO·ORDERED.