OPINION OF THE COURT
Mary H. Smith, J.
This is a CPLR article 78 proceeding seeking to challenge the determinations made and penalties imposed by the respondents in a number of prison disciplinary matters.
The petitioner is a prisoner, convicted of robbery in the second degree as a second violent felony offender, serving an ' indeterminate sentence of 5 to 10 years, ordered to run consecutively to the undischarged portion of a previously imposed sentence of 4 to 8 years (see, People v Trammell, 211 AD2d 527, lv denied 85 NY2d 944). He was transferred to Sing Sing Correctional Facility in August of 1994. At the time of his arrival, he owed 510 days in the special housing unit (SHU) as *473 a result of numerous disciplinary infractions that are not the subject of this case. While in SHU petitioner was the subject of some two dozen misbehavior reports for acts ranging from assaults on staff and other inmates, weapons possession, refusal to comply with orders and harassment to numerous incidents of "unhygienic acts”, a euphemism for conduct including spitting at staff members as well as hurling feces and urine at them.
The full spectrum of available penalties was imposed upon petitioner for these infractions. He was given additional SHU time (the total of which surpasses the maximum expiration date of his sentence); he was denied package, commissary, telephone and other privileges; and he was placed on a restricted diet. None of these penalties deterred petitioner from further violent outbursts.
On December 16, 1994, Superintendent John P. Keane issued a memorandum to petitioner outlining additional measures that would be taken as a result of petitioner’s continuous violent behavior. Petitioner was ordered deprived of all property, both State issued and personal; he was placed under a restraint order; the restricted diet was continued; and he was placed in a cell equipped with a plexiglass shield. Petitioner was informed that, upon completion of a 48-hour period without a misbehavior report, he would be allowed a mattress and blanket.
The following day, the deprivation order was put into effect. Deputy Superintendent Brandt Kehn spoke with petitioner about the order. Trammell refused to surrender his property. Several other staff members spoke to petitioner, but he persisted in his refusal to yield. Correction officials then ordered the inmates in the adjoining cells removed. Petitioner was sprayed twice in the face with a "chemical agent” until he complied with an order to lie face down. Officers then entered the cell, restrained petitioner, cut his clothing off, and stripped the cell of its contents. Petitioner was left with one pair of undershorts.
. Petitioner sought to commence this proceeding by requesting an order to show cause. This court granted the application by issuing the requested order on February 6, 1995. On March 28, 1995 this court granted petitioner’s request for a preliminary injunction to the extent of removing dietary restrictions pending final determination of this matter. Petitioner was assigned counsel for this proceeding. By decision and order of this court dated October 27, 1995 an evidentiary hearing was ordered. At *474 the hearing, which took place on November 16 and 17, 1995, several witnesses testified, including corrections officials and a doctor who had examined petitioner. Trammell testified on his own behalf. Numerous documentary exhibits were also admitted into evidence.
By decision and order of this court dated April 12, 1996 the respondents were ordered to arrange for a psychiatric examination and report on the petitioner. This court received a copy of this report on or about June 26, 1996.
Petitioner raises several claims: he contends that prison officials have been deliberately indifferent to his medical and psychiatric conditions; that he was improperly denied participation in many of the disciplinary hearings held against him; and that the disciplinary sanctions imposed against him violate the constitutional ban on cruel and unusual punishments.
As to petitioner’s contention of deliberate indifference to his medical condition, the record developed in this case demonstrates that petitioner was seen daily by a nurse and weekly by a doctor in SHU. At no time did petitioner voice any medical complaint to these individuals. In fact, Dr. O’Connell, a physician who reviewed petitioner’s medical history and examined petitioner on November 15, 1995, testified at the hearing that he first learned of petitioner’s medical complaints from papers filed by petitioner with the court. The court further notes that, having personally observed the petitioner during the course of the evidentiary hearing, it appears that he is a well-developed man in excellent physical health. There is thus no support whatsoever in the record for petitioner’s contention.
Trammell’s claim concerning his psychiatric condition is focused on his insistence that his disciplinary infractions are the result of an uncontrollable urge to violate rules that rises to the level of a mental illness. He believes that, rather than being punished for these transgressions, he should be treated as an individual suffering from a psychiatric disorder. The results of his psychiatric evaluation, however, suggest that while petitioner experiences paranoid ideations, he is not psychotic. He is fully aware of his actions and his conduct is volitional. He has therefore failed to demonstrate either deliberate indifference to his mental condition or that any of his violent acts are attributable to mental disease.
Petitioner’s claim regarding his exclusion from various disciplinary proceedings must also fail. Initially, since he has not appealed any but 2 of the 25 proceedings against him, he *475 has failed to exhaust his administrative remedies (see, e.g., Matter of Patterson v Smith, 53 NY2d 98; People ex rel. Cotton v Rodriguez, 123 AD2d 338). This court is thus powerless to address this specific claim. In any event, petitioner testified in his own words that he did in fact commit the acts that led to the imposition of disciplinary sanctions. Having thus shown himself to be an individual of markedly violent and uncontrollable propensity, no blame can be placed at the feet of corrections authorities for excluding him from certain hearings.
It is patently obvious from the record of these proceedings, including petitioner’s own hearing testimony, that Trammell is a virtually incorrigible, recidivist violent offender. The various corrections officials made every attempt at modifying petitioner’s behavior, all to no avail. Every possible sanction that could have been imposed upon petitioner was indeed imposed on him, to the point where he was confined to SHU for the remainder of his prison sentence, he was placed in a Plexiglas-shielded cell, he was placed on a restricted diet consisting solely of cabbage and fortified bread (Nutriloaf), he was deprived of visitation, packages, commissary, telephone access, out-of-cell exercise, hot water, showers, soap, toothbrush, toilet paper, mattress, sheets, blankets, and every single item of property and clothing save for the one pair of undershorts he was wearing. At this point, petitioner claims (and this court agrees) that the prison authorities have gone too far.
That repeated acts of violence can properly be punished by lengthy confinement in SHU is a matter of settled law (see, e.g., Matter of Williams v Coughlin, 190 AD2d 883 [3d Dept], lv denied 82 NY2d 651). That this petitioner’s conduct has merited such punishment has been amply established in the record. Moreover, the propriety of encasing the cell of an individual who has repeatedly hurled projectiles ranging from sputum to excrement at passersby can hardly be called into question.
Similarly, dietary restrictions imposed as disciplipe are authorized by regulation and prison directive (see, 7 NYCRR— Correctional Services; Department of Correctional Services Directive No. 4933, § VII [A] [2]). This court has carefully examined both the list of ingredients of Nutriloaf (whole wheat flour, sugar, carrots, potatoes, whole and packaged milk and yeast) and the affidavit of registered dietician Elizabeth Vandewal attesting to Nutriloaf’s nutritional adequacy when analyzed by objective criteria. Nothing in the record suggests that Nutriloaf is less than a sufficient diet, and there is no *476 indication -that petitioner’s health has been or would be adversely affected by the imposition of this restricted diet.
It is the respondents’ deprivation order that this court finds troubling. While such orders are authorized "when it is determined that a threat to the safety or security of staff, inmates, or State property exists” (see, 7 NYCRR 305.2 [a]), nowhere are they authorized as disciplinary measures. There may well be an ancillary effect on an inmate’s behavior resulting from the imposition of an order depriving him of such things as showers and visits, but curtailment of these privileges may only be imposed to address potential threats to safety or security, not to obtain a "positive adjustment” of a prisoner’s attitude.
This is not to say that petitioner’s conduct did not warrant the imposition of a deprivation order barring him from enjoying privileges that could, in light of his egregiously violent conduct, compromise the security of the prison. Indeed, it was entirely appropriate under the circumstances to preclude petitioner from participating in any activity that would require his leaving his cell. Extending the deprivation order to items of property whose possession posed no threat to safety or security, however, was in excess of respondents’ jurisdiction.
7 NYCRR 302.2 (f) authorizes the denial of specific property "[i]f possession of any item * * * is determined to present a threat to the safety or security of staff, inmates, or State property” (emphasis supplied). There is no proof in the record to show that Trammell’s possession of toilet paper, soap, clothing, etc. presented a threat of any kind. It was therefore inappropriate to have forcibly confiscated this material from him.
There are certainly situations where the possession of bedding or articles of clothing may indeed be the subject of a deprivation order (for example, in the case of a suicidal inmate who might well fashion these items into a makeshift noose). This is not such a case. Here, petitioner was deprived of clothing, bedding and personal hygiene items solely as a punishment, which is completely unauthorized.
Our Federal and State Constitutions, our laws, our rules and . regulations, and our administrative directives set limits on the extent to which punishments may be imposed for transgressions, however heinous and however recidivist their perpetrators. At times, these limits may hinder our society’s ability to prevent violent behavior. Nonetheless, our public servants must be guided by these limits. It is therefore ordered that the instant petition is granted to the extent that the respondents’ *477 deprivation order of December 16, 1994 is vacated insofar as it seeks to deprive petitioner of personal property to which he is entitled under 7 NYCRR 302.2. Any reference in petitioner’s disciplinary record to this deprivation order as a penalty imposed for misconduct shall be expunged. The petition is denied in all other respects, and the preliminary injunction issued by decision and order of this court dated March 28, 1995 is hereby vacated.