**Aaron BREAZIL, Plaintiff,**

**v.**

**George J. BARTLETT, Michael Rabideau, DSA, and John Burge, Deputy Superintendent of Security, Defendants.**

No. 95–CV–1016T (H).

United States District Court,
W.D. New York.

Sept. 29, 1997.

## ORDER

TELESCA, District Judge.

Plaintiff, Aaron Breazil, a prisoner proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 alleging that his civil rights were violated by defendants, George Bartlett, Michael Rabideau, and John Burge. By motion dated November 15, 1996, defendants moved for summary judgment against the plaintiff. By motion dated November 27, 1996, plaintiff cross-moved to amend the complaint and for appointment of counsel. On April 22, 1997, this case was referred to United States Magistrate Judge Carol E. Heckman, for all proceedings necessary to determine the merits of the factual and legal issues presented by the action.

Pursuant to that order, on May 1, 1997, Magistrate Judge Heckman issued a Report and Recommendation recommending that defendants' motion for summary judgment be granted, and plaintiff's motion to amend and for appointment of counsel be denied. By order dated May 7, 1997, and pursuant to plaintiff's letter request, plaintiff's time to object to the Report and Recommendation was extended until May 30, 1997. Plaintiff, however, has failed to object to the Report and Recommendation.

There being no objection to the May 1, 1997 Report and Recommendation of Magistrate Judge Heckman, I hereby adopt the Magistrate Judge's findings and conclusions, and grant defendants' motion for summary judgment, and deny plaintiff's motion to amend and for appointment of counsel. Accordingly, this case is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

HECKMAN, United States Magistrate Judge.

## REPORT AND RECOMMENDATION AND ORDER

This case has been referred to the undersigned by Hon. Michael A. Telesca, pursuant to 28 U.S.C. § 636(b)(1), for pretrial matters and to hear and report on dispositive motions. Defendants have filed a motion for summary judgment (Item 22) pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has responded to this motion, and has filed a motion for leave to amend or supplement his complaint (Item 30) and a motion for appointment of counsel (Item 45). For the reasons that follow, it is recommended that defendants' motion for summary judgment be granted. Plaintiff's motions to amend/supplement and for appointment of counsel are denied.

### BACKGROUND

On June 27, 1995, J.C. Sullivan, a Corrections Officer at the Elmira Correctional Facility maintained by the New York State Department of Correctional Services ("NYS-DOCS"), issued an Inmate Misbehavior Report charging plaintiff with throwing a cup full of feces and urine on Sullivan and Corrections Counselor Christine Jussaume, in

violation of Rules 100.11 [1] and 118.22 [2] of the NYSDOCS Institutional Rules of Conduct/Standards of Inmate Behavior (Item 23, Ex. 20). At the time, plaintiff was confined in the Elmira facility's Special Housing Unit ("SHU").[3] As a result of this incident, plaintiff was moved to a cell with a plexiglas shield and placed on a restricted diet, in accordance with NYSDOCS regulations and directives. *See* 7 N.Y.C.R.R. §§ 304.2 (restrictive diet), 305.6 (cell shield); NYSDOCS Directive No. 4933(VII)(A) (restricted diet), & (VIII)(F) (cell shield). The cell shield order was signed by Sgt. R.N. Latterell (Item 23, Ex. 168) and authorized by acting Deputy Superintendent John Burge (*id.*, Ex. 167). The pre-hearing restricted diet order was signed by both Burge and Superintendent George Bartlett (*id.*, Ex. 29). Plaintiff remained on the restricted diet, consisting of a one-pound "Nutriloaf" (whole wheat flour, sugar, carrots, potatoes, whole and packaged milk and yeast) and one cup of raw cabbage served three times a day (*see id.*, Ex. O; *see also Trammell v. Coombe,* 170 Misc.2d 471, 649 N.Y.S.2d 964, 967 (N.Y.Sup.1996)), until July 4, 1995 (Item 23, Ex. 29; Item 38, ¶ 6).

A disciplinary hearing was held on July 13, 1995 before Hearing Officer Michael Rabideau. Plaintiff was found guilty of the charges in the misbehavior report, and was assessed a penalty of 45 days restricted diet, an additional 36 months SHU confinement and loss of recreational, package, commissary and telephone privileges, and 24 months loss of good time credits (Item 43, Exs. 14-15). During the period from July 31, 1995, to September 25, 1995, plaintiff was served a restricted diet for seven consecutive days followed by two days of regular meals (Item 39, Ex. S).

On September 14, 1995, NYSDOCS Director of Special Housing/Inmate Discipline Donald Selsky reversed the July 13, 1995 hearing determination and ordered a rehearing, based on the hearing officer's "[f]ailure to provide written reason for denial of requested witness" (Item 43, Ex. 13). Plaintiff's rehearing was held on September 28, 1995 before Hearing Officer Larry Bates. Plaintiff refused to attend the hearing (Item 39, Ex. 1(B)). Relying on the June 27, 1995 misbehavior report, photographs of plaintiff's cell, and other documentary evidence, and considering plaintiff's refusal to present evidence or witnesses in his defense, Hearing Officer Bates found plaintiff guilty of the charges in the misbehavior report. He imposed a penalty of 365 days SHU confinement and loss of recreational, package, commissary and telephone privileges, 12 months loss of good time credits, and 35 days restricted diet (Item 23, Exs. 17-19). On October 3, 1995, Captain G.D. Aidala amended the hearing officer's disposition to give plaintiff credit for time already served on restricted diet (Item 23, Ex. 24).

On October 10, 1995, plaintiff filed this action *pro se* in the Northern District of New York, pursuant to 42 U.S.C. § 1983. In his complaint, plaintiff claims that Bartlett and Burge violated his rights under the equal protection clause and the eighth amendment to the United States Constitution by ordering his pre-hearing cell shield confinement and restricted diet. Plaintiff also claims that Rabideau's conduct of the hearing on July 13,

1. Rule 100.11 provides:

   Inmates shall not assault, inflict or attempt to inflict bodily harm on any staff member.
   7 N.Y.C.R.R. § 270.2(B)(1)(ii).

2. Rule 118.22 provides:

   Inmates shall not commit an unhygienic act such as spitting, urinating or defecation on the floor or any other area, or throwing urine or feces.
   7 N.Y.C.R.R. § 270.2(B)(19)(iv). In 1996, the New York State Legislature enacted § 240.32 of the New York Penal Law, effective June 5, 1996, making this conduct a class E aggravated felony punishable by an additional prison term of 1-4 years (*see* N.Y. Penal Law §§ 70.00(2)(e),

70.00(3)(b)), or 3-5 years for a second felony offender (*see* N.Y. Penal Law § 70.06(3)(e)).

3. Plaintiff's inmate disciplinary record, submitted as an Exhibit to the affidavit of Elmira Deputy Superintendent John Burge in support of defendants' summary judgment motion (Item 23), shows that plaintiff had approximately 90 separate disciplinary hearings at 11 different correctional facilities between February of 1987 and October of 1996, resulting in disciplinary penalties including loss of privileges, keeplock confinement, loss of recommended good time credits, restricted diet and confinement in the SHU until June 29, 2010 (*id.*, pp. 1-12). No less than 15 of those hearings involved charges of unhygienic acts (*id.*, pp. 1-2, 5-11).

1995, and the disciplinary penalty that resulted, violated his fourteenth amendment due process rights, and that the conditions of his confinement (including inadequate ventilation in the shielded cell and a nutritionally deficient restricted diet) violated his eight amendment right to be free from cruel and unusual punishment.

On November 13, 1995, Magistrate Judge Ralph Smith entered an order transferring the case to this district (Item 6). On February 27, 1996, Judge David G. Larimer granted plaintiff's application to proceed *in forma pauperis,* and dismissed the complaint to the extent that it stated a claim against Corrections Officer Mark Taylor for lack of personal involvement in the alleged constitutional violations (Item 7).

Defendants Bartlett, Burge and Rabideau now move for summary judgment. Plaintiff has moved for leave to file an amended or supplemental complaint to challenge the constitutionality of the September 28, 1995 hearing and the resulting disciplinary penalty, and for appointment of counsel to assist him in litigating his claims. Each of these motions is discussed in turn below.

## DISCUSSION

### I. Defendants' Motion for Summary Judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.,* 933 F.2d 162, 166–67 (2d Cir.1991), and must give extra latitude to a *pro se* plaintiff. *McDonald v. Doe,* 650 F.Supp. 858, 861 (S.D.N.Y.1986).

Defendants Bartlett, Burge and Rabideau move for summary judgment on the following grounds:

1. That plaintiff's cell shield confinement and restricted diet, both pre-hearing and post-hearing, did not violate his eighth amendment right to be free from cruel and unusual punishment;

2. That plaintiff has no protected liberty interest in remaining free from cell shield confinement;

3. That the administrative reversal of his July 13, 1995 hearing cured any due process violations which may have occurred at that hearing; and,

4. That the defendants are entitled to qualified immunity.

Each of these grounds is now discussed in turn.

### A. Eighth Amendment.

The eighth amendment protects prisoners from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials. *Romano v. Howarth,* 998 F.2d 101, 104 (2d Cir.1993)(citing *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), and *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The core inquiry for the court in assessing a prisoner's claim that prison officials subjected him or her to cruel and unusual punishment is whether the prison officials acted "in a good-faith effort to maintain or restore prison discipline, or maliciously and sadistically to cause harm." *Hudson v..McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

An inmate claiming that prison officials subjected him or her to cruel and unusual punishment has the burden of establishing both an objective and a subjective component. *Romano v. Howarth, supra,* 998 F.2d at 105. Objectively, the plaintiff must establish that the deprivation alleged is sufficiently serious or harmful enough to reach constitutional dimensions. *Id.; see also Wilson v. Seiter, supra.* Subjectively, the plaintiff must show that the defendants acted

"maliciously and sadistically to cause harm . . . ." *Id.* 503 U.S. at 7; *Romano v. Howarth, supra,* 998 F.2d at 105.

■ In this case, plaintiff has failed to establish that the cell shield and diet restrictions at issue, either pre-hearing or post-hearing, were the result of any wanton, malicious or sadistic conduct on the part of defendants Bartlett, Burge or Rabideau. The record clearly establishes that these punitive restrictions were imposed in a good-faith effort to maintain prison discipline as a response to the feces-throwing incident on June 27, 1995. The propriety of punishing an inmate's repeated unhygienic acts by cell shield confinement is a matter of settled law in New York State. *See, e.g., Trammell v. Coombe, supra,* 649 N.Y.S.2d at 967; *Williams v. Coughlin,* 190 A.D.2d 883, 593 N.Y.S.2d 570 (3rd Dept.), *leave to appeal denied,* 82 N.Y.2d 651, 601 N.Y.S.2d 581, 619 N.E.2d 659 (1993); *see also DeMaio v. Mann,* 877 F.Supp. 89, 93 (N.D.N.Y.1995). Plaintiff does not deny that this incident occurred, and the record in this case clearly establishes that plaintiff's conduct warranted his confinement in a shielded cell. The valid penological need for cell shield restriction of an individual who has repeatedly hurled excrement at passersby can hardly be called into question. *Trammell v. Coombe, supra; see also* N.Y. Penal Law § 240.32 (1996), Practice Commentary.

■ In addition, the cruel and unusual punishment clause of the eighth amendment does not prohibit prison officials from restricting an inmate's diet as a punitive measure, as long as the inmate receives nutritionally adequate food that does not present an imminent health risk. *Williams v. Coughlin,* 875 F.Supp. 1004, 1011 (W.D.N.Y.1995)(citing *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983)); *Brown v. Selsky,* 1995 WL 13263, *8 (W.D.N.Y. Jan.10, 1995); *see also Adams v. Kincheloe,* 743 F.Supp. 1385, 1393 (E.D.Wa.1990)(restricted "nutra-loaf" diet did not violate inmate's eighth or fourteenth amendment rights; state interest in effectively preventing unhygienic acts outweighs interest of inmates in receiving regular prison food); *Gray v. Jones,* 83 A.D.2d 679, 442 N.Y.S.2d 225 (3rd Dept.1981)(restricted diet, while unappealing, does not violate state law; imposition of restricted diet was self-induced by behavior of inmates), *appeal dismissed as moot,* 56 N.Y.2d 934, 453 N.Y.S.2d 680, 439 N.E.2d 395 (1982).

In this case, the dietary restrictions imposed on plaintiff as discipline for the June 27, 1995 feces-throwing incident are authorized by regulation and prison directive. *See* 7 N.Y.C.R.R. § 304.2; NYSDOCS Directive No. 4933, § VII(A)(2)(b), (c). Nothing in the record suggests that the "Nutriloaf" and cabbage diet given to plaintiff was less than nutritionally adequate, or posed an imminent health risk (*see* Aff. of Elmira Nurse Administrator Ann White. Item 42; *see also* Medical Records attached to Item 26).

Accordingly, plaintiff has failed to establish that the cell shield confinement and restricted diet were imposed by defendants maliciously and sadistically to cause plaintiff harm. Instead, defendants have sufficiently demonstrated that these restrictions were imposed in a good faith effort to restore or maintain discipline subsequent to plaintiff's unhygienic act on June 27, 1995. Defendants are therefore entitled to summary judgment dismissing the complaint to the extent it alleges a violation of plaintiff's eighth amendment right to be free from cruel and unusual punishment.

### B. Due Process.

■ In order to succeed on his § 1983 claim for denial of procedural due process based on the penalties imposed as a result of his disciplinary hearings, plaintiff must show that he possessed a liberty or property interest protected by the United States Constitution or federal statutes and, if so, that he was deprived of that interest without due process of law. *See, e.g., Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Green v. Bauvi,* 46 F.3d 189, 194 (2d Cir.1995). Applying this standard to the record in this case, I find that plaintiff has failed to make this required showing.

First of all, plaintiff's cell shield confinement was not ordered as a punitive measure

in either the July 13, 1995 or the September 28, 1995 hearing determination. Instead, the cell shield restriction took place pursuant to 7 N.Y.C.R.R. § 305.6, which permits the use of cell shields for good cause.

■ In addition, courts in this Circuit have found that a prison inmate in New York has no protected liberty interest in confinement in an unshielded cell. *DeMaio v. Mann,* *supra,* 877 F.Supp. at 93; *Young v. Scully,* 1993 WL 88144, at *3 (S.D.N.Y.1993).

■ However, even assuming for the purposes of this case that plaintiff has a protected liberty or property interest in remaining free from punitive cell shield or dietary restrictions, *see, e.g., Malik v. Tanner,* 697 F.Supp. 1294, 1301 n. 10 (S.D.N.Y.1988), I find that plaintiff received all the process he was due under the circumstances. *See, e.g., Prewitt v. Coughlin,* 1992 WL 331274, at *1 (S.D.N.Y. November 4, 1992)(administrative reversal of disciplinary ruling demonstrates existence of due process rather than absence; § 1983 actions do not exist for purpose of having federal courts become involved in minor restrictions of prisoner's diet).

■ Under *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), an inmate facing disciplinary proceedings which could result in the loss of a constitutionally protected liberty interest is entitled to the following minimum due process safeguards: 1) written notice of the hearing at least 24 hours in advance; 2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and 3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell,* *supra,* 418 U.S. at 563–67. Furthermore, some evidence must exist to support the disciplinary conviction. *Superintendent, Mass. Correctional Inst., Walpole v. Hill,* 472 U.S. 445, 455–56, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). In addition, the administrative appeal process is part of the due process protection afforded prisoners. *Young v. Hoffman,* 970 F.2d 1154 (2d Cir. 1992), *cert. denied,* 510 U.S. 837, 114 S.Ct.

115, 126 L.Ed.2d 80 (1993); *Harper v. Lee,* 938 F.2d 104, 105 (8th Cir.1991).

In this case, the record before the court establishes that plaintiff received all the process he was due under these standards. He received timely notification of the hearing and rehearing, and obtained adjournments in order to allow him to prepare his defense of the charges. Plaintiff complains primarily that he was denied the opportunity to call Inmate Curtis Griffin as a witnesss at his July 13, 1995 hearing. However, the record is clear that the disciplinary penalty imposed in both the initial hearing determination and the rehearing determination was based on the particular hearing officer's finding that plaintiff threw feces and urine on Counselor Jussaume and Officer Sullivan. There is nothing in the record to suggest that Inmate Griffin's testimony would have had any impact on these findings (*see* Item 43, Ex. 9, 10).

In addition, as noted in the hearing officer's determination and as reflected in the transcript of the rehearing proceedings (Item 39, Ex. 1(B)), plaintiff "declin[ed] to attend the substantive part of [his] hearing to state a defense [and] present/request witnesses . . ." (Item 23, Ex. 18). Nonetheless, as a result of the rehearing plaintiff's disciplinary penalty for the June 27, 1995 feces-throwing incident was substantially reduced, and credit was assessed for time already served on the restricted diet imposed as a result of the July 13, 1995 hearing. *See, e.g., Gaston v. Coughlin,* 861 F.Supp. 199, 207–08 (W.D.N.Y. 1994). As stated by the court in *Gaston:*

> To hold that where an inmate is determined, after a properly conducted hearing, to have violated prison disciplinary rules and suffering no deprivation of liberty not found justified as a result, nevertheless accrues an enforceable constitutional claim based on errors at an earlier proceeding, would exalt appearance over reality, contrary to the rehabilitative objectives stated by the Court in *Wolff,* and may weaken "the disciplinary process as a rehabilitation vehicle."

*Id.* at 208 (quoting *Wolff, supra,* 418 U.S. at 568); *see also Valentine v. Honsinger,* 894 F.Supp. 154, 158 (S.D.N.Y.1995)(no due pro-

cess claim where original hearing was reversed and expunged, and sentence ordered on rehearing was limited to punishment already served).

Finally, plaintiff received a written statement of the evidence relied on by Hearing Officer Bates for his finding of guilty on the charges of assault on staff and committing an unhygienic act, as well as his reasons for the disciplinary penalty imposed. That evidence consisted of the report of Officer Sullivan and photographs of the area where the incident took place (*see* Item 23, Ex. 16). This is sufficient to meet the "some evidence in the record" standard of *Superintendent v. Hill* and *Wolff v. McDonnell. See Rudd v. Sargent,* 866 F.2d 260, 262 (8th Cir.1989)(statements in officer's disciplinary report constitute "some evidence" even though officer did not witness alleged violation); *White v. Kane,* 860 F.Supp. 1075, 1078 (E.D.Pa.1994)(guards' written report constitutes "some evidence"), *aff'd,* 52 F.3d 319 (3d Cir.1995); *Ames v. Artuz,* 1989 WL 54114 at *6, n. 10 (S.D.N.Y. 1989)("To discount or discredit [the officer]'s report ... as evidence would necessarily require ... an independent assessment of the charging officer's credibility and to weigh all the evidence adduced at the disciplinary hearing accordingly—a function neither required nor encouraged by *Hill.*").

Under these circumstances, I find that plaintiff received all the process due to him in the administrative adjudication of the misbehavior report arising out of the June 27, 1995 feces-throwing incident. Accordingly, I find that no reasonable jury could return a verdict in favor of plaintiff on his due process claims. Defendants are therefore entitled to summary judgment dismissing the complaint insofar as it alleges a denial of due process.

### C. Reversal of July 13, 1995 Hearing.

Defendants also seek summary judgment on the ground that the reversal of the July 13, 1995 hearing determination, expungement of the disciplinary penalties imposed as a result of that hearing, and rehearing of the charges in the June 27, 1995 misbehavior report cured any procedural defects and precludes plaintiff from bringing a due process claim under § 1983.

In *Walker v. Bates,* 23 F.3d 652 (2d Cir.1994), *cert. denied,* 515 U.S. 1157, 115 S.Ct. 2608, 132 L.Ed.2d 852 (1995), the Second Circuit held that reversal on administrative appeal does not cure procedural defects that occurred at a prisoner's disciplinary hearing where the reversal occurs after the prisoner has served at least a portion of the restrictive confinement. *Id.* at 658; *see also Mays v. Mahoney,* 23 F.3d 660 (2d Cir. 1994)(same). Neither *Walker* nor *Mays* addressed the question presented in this case— *i.e.,* whether administrative reversal, expungement and rehearing of a disciplinary charge, resulting in a significant reduction of the length of punitive confinement and at least partial credit for time served on restricted diet, cured the procedural defects that allegedly occurred at the first hearing of the charge. As suggested by the discussion above, because reversal, expungement and rehearing afforded plaintiff all the process due him under *Wolff v. McDonnell,* the procedural defects of his first hearing have been cured.

Accordingly, the rule of *Walker* and *Mays* does not apply in this case. Defendants are therefore entitled to summary judgment on the ground that the administrative reversal, expungement and rehearing on September 28, 1995 of the disciplinary charges arising out of the June 27, 1995 feces-throwing incident cured the procedural defects alleged to have occurred at the first hearing on July 13, 1995.

### D. Qualified Immunity.

State officials performing discretionary functions in the course of their duties are immune from suits alleging constitutional violations "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)(quoted in *Russell v. Coughlin,* 910 F.2d 75, 78 (2d Cir.1990)). Even when such rights are clearly established, qualified immunity will protect a government official "if it was objectively reasonable for [the official] to believe that his acts did not violate those rights." *Robison v. Via,* 821 F.2d 913, 921

(2d Cir.1987); *Russell, supra,* 910 F.2d at 78; *Gittens v. LeFevre,* 891 F.2d 38, 42 (2d Cir. 1989). "The objective reasonableness test is met—and the defendant is entitled to immunity—if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995).

■ Thus, a defendant is entitled to summary judgment on qualified immunity grounds when, "looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff[ ]," *Halperin v. Kissinger,* 807 F.2d 180, 189 (D.C.Cir.1986), *quoted in Robison, supra,* 821 F.2d at 921, the court determines that no reasonable jury could conclude that it was objectively unreasonable for the defendant to believe that his or her conduct or actions did not violate an established federally protected right. *Lennon, supra,* 66 F.3d at 420. "In other words, if any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment." *Id.*

In this case, as the above discussion demonstrates, no reasonable trier of fact could conclude that the issuance and approval of the cell shield and restrictive diet orders by defendants Bartlett and Burge as a response to plaintiff's conduct on June 27, 1995 was objectively unreasonable. Those defendants are therefore entitled to summary judgment dismissing the claims for damages against them on the ground of qualified immunity.

■ However, because a reasonable trier of fact could find that defendant Rabideau's conduct of the July 13, 1995 disciplinary hearing (which was later reversed, expunged and reheard), and the disciplinary penalty imposed as a result of that hearing (which was substantially reduced on rehearing), was objectively unreasonable, defendant Rabideau is not entitled to summary judgment on qualified immunity grounds.

## II. Plaintiff's Motion to Amend/Supplement His Complaint.

■ Rule 15 of the Federal Rules of Civil Procedure provides that once time for amending a pleading as of right has expired, a party may request leave of court to amend, which "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The mandate of this rule requires the court to allow a party to amend its pleadings "[i]n the absence of any apparent or declared reason— such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *United States v. Continental Illinois National Bank and Trust Co. of Chicago,* 889 F.2d 1248, 1254 (2d Cir.1989). Thus, if the underlying facts or circumstances relied upon by a party may be a proper subject of relief, the party should be afforded the opportunity to test the claim on its merits. *Id.*

■ In this case, plaintiff seeks to amend his complaint to challenging the constitutionality of the rehearing concluded on September 28, 1995. As suggested by the discussion above, such an amendment would be futile because the record demonstrates that the rehearing of the disciplinary charge, and the reduction in plaintiff's disciplinary penalty which resulted, provided plaintiff with the procedural protections he was due and cured any procedural defects that may have occurred during the July 13, 1995 hearing.

■ Plaintiff also claims that he should be allowed to supplement his complaint pursuant to Fed.R.Civ.P. 15(d), which provides that a party may "serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Under this rule, a party may supplement the original pleading to add new claims or new defendants, based on subsequent occurrences which are related to the claims presented in the original complaint. *Klos v. Haskell,* 835 F.Supp. 710, 715 (W.D.N.Y.1993), *aff'd,* 48 F.3d 81 (2d Cir. 1995); *Albrecht v. Long Island R.R.,* 134 F.R.D. 40, 41 (E.D.N.Y.1991).

In this case, plaintiff's original complaint was dated September 29, 1995, and was filed in the Northern District of New York on

246

October 10, 1995. The rehearing was completed on September 28, 1995. The only event set forth in plaintiff's proposed "Amended Complaint for Supplemental Pleadings" which occurred subsequent to the filing of the complaint was the November 22, 1995 administrative affirmance of the rehearing determination. Since this court has already found that the rehearing afforded plaintiff due process under *Wolff v. McDonnell* and cured the procedural defects of the original hearing, leave to supplement to add a claim based on an alleged procedural deficiency in the September 28, 1995 rehearing would likewise be futile.

Accordingly, plaintiff's motion for leave to amend or supplement his complaint is denied.

### III.  Plaintiff's Motion for Appointment of Counsel.

Finally, plaintiff has applied to the court for appointment of counsel. Pursuant to 28 U.S.C. § 1915(d), the court may appoint counsel to assist indigent litigants. *Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir.1988).

■■■■■ It is clear that appointment of counsel in this matter is in the judge's discretion. *See In Re Martin–Trigona*, 737 F.2d 1254 (2d Cir.1984). The factors to be considered in deciding whether or not to appoint counsel are set forth by the Second Circuit in *Hodge v. Police Officers*, 802 F.2d 58 (2d Cir.1986). However, the court should exercise its discretion to appoint counsel only in cases where the plaintiff has made "a threshold showing of some likelihood of merit." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir.1989).

As indicated by the discussion above, plaintiff has failed to make that showing in this case. Accordingly, his motion for appointment of counsel is denied.

### CONCLUSION

For the foregoing reasons, it is recommended that defendants' motion for summary judgment (**Item 22**) be granted, and the case dismissed.

Plaintiff's motion for leave to amend or supplement his complaint (**Item 30**) is DENIED.

Plaintiff's Motion for appointment of counsel (**Item 45**) is DENIED.

April 30, 1997

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and a copy of the Report and Recommenda-

tion to the plaintiff and the attorney for the defendants.

**SO ORDERED.**