731 N.E.2d 1270 (2000)
314 Ill. App.3d 712
247 Ill.Dec. 262
In re E.B. and W.B., Minors (The People of the State of Illinois, Petitioner-Appellee,
v.
Christa Burns, Respondent-Appellant).
No. 4-99-0612.
Appellate Court of Illinois, Fourth District.
June 29, 2000.
Justice MYERSCOUGH delivered the opinion of the court:
In October 1998, respondent mother stipulated to a neglect petition that alleged her children were in an injurious environment because she exposed the children to the risk of sexual abuse. The court continued the case under supervision (705 ILCS 405/2-20 (West 1998)) at the recommendation of the State and the agreement of all parties.
*1271 In May 1999, the trial court sua sponte entered an adjudicatory order finding respondent's children neglected. However, no petition to terminate continuance of the case under supervision had been filed, and the court held no hearing to terminate the continuance under supervision. In June 1999, the court held a dispositional hearing, found the children neglected, and removed custody and guardianship from respondent parents and placed them with the Department of Children and Family Services (DCFS). Respondent mother appeals, arguing that (1) the trial court entered the May 1999 adjudicatory order in a constitutionally defective manner and in violation of state law; (2) the court's decision to terminate continuance under supervision and remove custody and guardianship from respondent was against the manifest weight of the evidence; and (3) respondent received ineffective assistance of counsel. We agree that the trial court entered the adjudicatory order in a manner that was inconsistent with the statute and reverse and remand.

I. BACKGROUND
Both parents appealed the trial court's order removing custody and guardianship, docketed Nos. 4-99-0596 (respondent father) and 4-99-0612 (respondent mother). This opinion addresses only the mother's appeal, No. 4-99-0612. Facts relating to the respondent father are discussed for the purpose of clarity.
Respondents Christa and Robert Burns are the biological parents of E.B., born September 25, 1992, and W.B., born December 11, 1994. DCFS received the following five indicated reports of abuse prior to filing the neglect petition in this case.
In March 1995, DCFS received a hot-line report alleging inadequate supervision due to respondent father being intoxicated while babysitting for the children. In March 1996, DCFS received a hot-line report alleging risk of harm to the children by respondent father.
In September 1997, DCFS received a hot-line report alleging that an uncle sexually molested E.B. DCFS opened a file on the family in October 1997 in response to this report.
In June 1998, DCFS received a hot-line report alleging inadequate and inappropriate supervision of the children based on respondent mother's inability to prevent five-year-old E.B. from sexually acting out with three-year-old W.B.
In July 1998, DCFS received an additional hot-line report alleging risk of sexual harm to E.B. and W.B. because a convicted sex offender resided with the children.
In August 1998, the State filed a two-count petition pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(b) (West 1998)), alleging that the children's environment was injurious to their welfare because the environment exposed the children to sexual abuse (count I) and alcohol abuse (count II).
In September 1998, the trial court held a shelter-care hearing. The court found probable cause for the allegations in the petition and set an adjudicatory hearing. However, custody of the children remained with respondent mother.
In October 1998, the trial court held an adjudicatory hearing. Respondent mother initially agreed to stipulate to the petition on the condition that the case would be continued under supervision pursuant to section 2-20 of the Act (705 ILCS 405/2-20 (West 1998)). The trial court would not accept a conditional stipulation, however, because it wanted to know the facts of the case before agreeing to continuance under supervision. The trial court also informed the parties that their decision to stipulate to the facts or waive a hearing was completely independent of, and would have no impact on, whether the court granted continuance under supervision.
After additional discussion with counsel, respondent mother once again agreed to stipulate to count I. The State struck *1272 respondent father's name from count I of the petition and withdrew count II. Respondent father then waived a hearing on count I and agreed to the court taking judicial notice of respondent mother's stipulation. The court continued the matter under supervision at the recommendation of the State and with the agreement of all parties. The trial court based its order continuing the case under supervision on the condition that respondents "cooperate fully and completely with [DCFS]." The court then set the matter for a status review in April 1999.
The docket entries show at least two continuances in April 1999. The docket entries reveal that respondent mother's counsel was unavailable for the first review date and that respondent father was unavailable at the second review date. The trial court continued the matter until May 1999.
In May 1999, respondent father's attorney again moved for a continuance because DCFS failed to file its report on time. The transcript reveals that no party objected to the respondent father's motion, and the court continued the matter until June 1999. No other issues were discussed.
Later that same day in May 1999, the trial court inexplicably entered an adjudicatory order finding "[b]y a preponderance of the evidence and by clear and convincing evidence, the minors have an environment injurious to their welfare by reason of said environment expos[ing] the minors to risk of sexual abuse [because] respondent mother allowed Robert Skaggs, [knowing that Skaggs was] a convicted child molester, to live in the home with the minors for a minimum of two weeks." However, no docket entry reveals that any party filed a petition to terminate continuance of the case under supervision, and nothing in the record shows that an adjudicatory hearing took place prior to entry of the court's order terminating respondents' supervision.
In June 1999, the trial court held a dispositional hearing. The trial court asked if each party had received DCFS' reports dated April, May, and June 1999. Both respondents' counsel asserted that they had received the reports and had no additions, corrections, or additional evidence to present.
The reports described the case history to date and briefly reviewed the previously described indicated reports. The reports also informed the court that respondent father had pleaded guilty to aggravated battery to a child and was at that time serving an eight-year sentence on that offense. Respondent father was due to be released in April 2000. The reports stated that respondent father maintained his innocence.
The reports also revealed that two separate indicated reports involving the respondent father's paramour's children were filed against respondent father for (1) sexual abuse to a child in May 1997 and (2) risk of harm to a child in March 1996. Respondent father asserted, however, that he never previously received notice of these indicated reports and planned on filing an appeal with DCFS because he disputed the factual basis for each.
The respondent mother generally received a favorable review in all of the reports. The reports referred to respondent mother's continued "willingness to work cooperatively with the Department in insuring her children are safe from future victimization and receive the support services they need." However, the May and June reports also expressed a great deal of concern over the respondent mother's continued belief that her husband is innocent of all charges and indicated reports.
The May and June reports concluded by expressing concern over the lack of counseling that respondent father had received while incarcerated. The May report specifically suggested that respondent father's denial and minimization of his behaviors and the consequence of his behaviors posed a significant problem. The report *1273 recommended that custody and guardianship be awarded to DCFS based primarily on the fact that (1) respondent father had received no services and continued to maintain his innocence on the charged offenses and indicated reports, and (2) respondent mother continued to believe in her husband's innocence and desired to reintegrate her husband into the family upon his release from prison.
Prior to rendering its decision at the dispositional hearing, the court stated:
"Thefirst of all counsel, I don't know if I mentioned this. This has been continued several times. I did enter an adjudicatory order in this cause back on May 27, 1999. I don't know if copies got distributed. All right. They did? All right. I just want to verify that.
Second clean[]up matter, I don't know if Iwhen we had the initial hearing as to the possibility of continuing the court supervision[,] if I specifically enunciated my reasons for not wishing to grant supervision in this matter, so I thought I would at least review that today.
First of all, there was an objection by one of the parties, and obviously that knocks out any possibility of supervision, but for the sake of the record, I will also note that I believe the respondent mother may have been doing all that she could, but that was not enough at that point. The case had been previously under supervision for six months and had not been resolved."
The court then asserted that it concurred with the more recent DCFS reports' concerns regarding respondent mother's continuing relationship with respondent father.
Immediately following the court's comments, the State agreed with the court's reasons for previously terminating continuance of the case under supervision and asserted that "the court has to find both of these parents unfit." The State asked the court to adopt the June report's recommendations and remove custody of the children from respondent mother. The parties failed to challenge the court's recall of events regarding its continuance of the case under supervision even though the record clearly demonstrates that no party had previously objected to continuance under supervision.
Shortly after the dispositional hearing concluded, the trial court entered a written order finding the children neglected and making each a ward of the court. The court further found that respondent parents were "unfit for reasons other than financial circumstances alone" and that removing custody from respondent parents was in the children's best interests. The trial court set a permanency hearing for December 1999. Respondent mother appealed.

II. ANALYSIS
Respondent mother first argues that the trial court entered the adjudicatory order in a constitutionally defective manner and in violation of state law. Respondent mother specifically asserts that the trial court erred when it terminated continuance of the case under supervision without a petition to terminate the continuance under supervision being filed or a hearing being held, as required by section 2-20(5) of the Act. 705 ILCS 405/2-20(5) (West 1998). Respondent mother additionally asserts that the trial court violated her constitutional rights to due process (U.S. Const., amend. V; Ill. Const. 1970, art. I, § 2) when it terminated continuance of the case under supervision without notice or the opportunity to be heard.
In response, the State argues that section 2-20(5) of the Act does not apply because the State objected to continuance under supervision during the June 1999 dispositional hearing. The State additionally asserts that section 2-20(5) applies only "if" a petition charging a violation of supervision is filed. The State concludes, therefore, that (1) a court may terminate supervision without a petition to terminate *1274 continuance under supervision being filed, and (2) any objection by the State after continuance under supervision eliminates the need for a hearing under section 2-20(5).
The basic issue before this court is whether a trial court may terminate continuance of a case under section 2-20 without a petition to terminate such continuance under supervision having been filed or a hearing to terminate such continuance under supervision. A court may not do so.
The preeminent rule of statutory construction is to give effect to the language and intent of the legislature. People v. Hicks, 164 Ill.2d 218, 222, 207 Ill. Dec. 295, 647 N.E.2d 257, 259-60 (1995). To accomplish this goal, words used in the statutory provision should be given their plain and ordinary meaning. Hicks, 164 Ill.2d at 222, 207 Ill.Dec. 295, 647 N.E.2d at 259. A court must consider every part of the statute together, therefore, and give every word or phrase some reasonable meaning. People v. Bubolz, 288 Ill.App.3d 46, 223 Ill.Dec. 403, 679 N.E.2d 854, 855 (1997). Statutes are to be construed so that no clause is superfluous or void. In re Marriage of Stevens, 292 Ill.App.3d 994, 1001, 227 Ill.Dec. 242, 687 N.E.2d 165, 169 (1997). In addition, a court must assume that the legislature did not intend an absurd result. People v. Coleman, 166 Ill.2d 247, 253, 209 Ill.Dec. 782, 652 N.E.2d 322, 325 (1995).
The plain language of the statute supports respondent mother's argument that the trial court terminated continuance of the case under supervision and entered its adjudicatory order in violation of state law. Section 2-20 states:
"(1) The court may enter an order of continuance under supervision (a) upon an admission or stipulation by the appropriate respondent * * * of the facts supporting the petition and before proceeding to findings and adjudication, or after hearing the evidence at the adjudicatory hearing but before noting in the minutes of proceeding a finding of whether or not the minor is abused, neglected or dependent; and (b) in the absence of objection made in open court by the minor, his parent, guardian, custodian, responsible relative, defense attorney[,] or the State's Attorney.
(2) If the minor, his parent, guardian, custodian, responsible relative, defense attorney[,] or the State's Attorney, objects in open court to any such continuance and insists upon proceeding to findings and adjudication, the court shall so proceed.
* * *
(5) If a petition is filed charging a violation of a condition of the continuance under supervision, the court shall conduct a hearing. If the court finds that such condition of supervision has not been fulfilled the court may proceed to findings and adjudication and disposition." (Emphasis added.) 705 ILCS 405/2-20 (West 1998).
The plain language of section 2-20(1) clearly requires that any objection to supervision must be made in open court "before" the continuance of the case under supervision. The State argues, however, that a later objection to continuance under supervision after continuance under supervision is granted also eliminates the need for either a petition or a hearing under section 2-20(5). We disagree. Moreover, even if this proposed interpretation were correct, the State did not voice any objection to the continuance under supervision until almost one month after the court terminated the continuance of the case under supervision, providing little support for the court's terminating the continuance under supervision about a month earlier without a petition being filed or a hearing being held.
In the present case, the only condition that the trial court imposed in its order continuing the case under supervision required respondents to "cooperate fully and completely with [DCFS]." Section 2-20(5) *1275 of the Act states that "[i]f the court finds that such condition of supervision has not been fulfilled the court may proceed to findings and adjudication and disposition." 705 ILCS 405/2-20(5) (West 1998). However, section 2-20(5) also requires that "the court shall conduct a hearing" prior to making a finding of noncompliance with a condition of supervision. 705 ILCS 405/2-20(5) (West 1998).
The court clearly did not hold a hearing to determine whether the parents were cooperating fully and completely with DCFS prior to terminating continuance of the case under supervision. Instead, the trial judge sua sponte terminated continuance under supervision in response to the May 1999 status report from DCFS. The trial court terminated continuance under supervision, therefore, prior to any objection in open courtwithout the benefit of a petition alleging a violation of a condition of continuance under supervision and without the benefit of hearing to determine whether any allegations in the status report were true.
Due process requires adequate notice to a minor's parents prior to a juvenile proceeding. In re C.L.T., 302 Ill.App.3d 770, 778, 235 Ill.Dec. 863, 706 N.E.2d 123, 129 (1999). Section 1-5(1) of the Act states that the parents of a minor who is subject to a proceeding under the Act have "the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, [and] to examine pertinent court files and records." 705 ILCS 405/1-5(1) (West 1998). The State's proffered interpretation of the Act, therefore, is not only inconsistent with section 2-20(5), but also with section 1-5(1), because it would allow continuance of the case under supervision to be terminated without notice or an opportunity to be heard.
The trial court's alarm in the face of this situation is understandable. Regrettably, the State did not undertake appropriate action to terminate the continuance under supervision. However, the Act requires that respondents be provided with notice and a hearing as to whether respondents violated any conditions prior to terminating the continuance of the case under supervision. On remand, the State may file a petition to terminate the continuance under supervision and proceed accordingly.

III. CONCLUSION
For the reasons stated above, we reverse the judgment of the trial court and remand the case for further proceedings.
Reversed and remanded.
COOK, P.J., concurs.
McCULLOUGH, J., dissents.
Justice McCULLOUGH, dissenting:
On June 18, 1999, the State's Attorney, the guardian ad litem (GAL), the respondent mother and her attorney, the respondent father and his attorney, and DCFS by its attorney were present before the court. The court stated the cause was "called for dispositional hearing." The trial court then stated the entry of the adjudicatory order on May 29, 1999. It then reviewed various reports that had been filed. In response, the State, the GAL, respondent mother's attorney, and respondent father's attorney stated that they had "no additions, corrections or additional evidence." Each party was given an opportunity to address the reports and make recommendations. The trial court then made a detailed and expansive statement concerning its order appointing DCFS as guardian, advised the parties of their right to appeal, and set the matter for a permanency hearing.
None of the parties objected to proceeding with the dispositional hearing. No party then objected to any failure to comply with section 2-20 of the Act. The majority suggests that no hearing was held concerning the cooperation of the parents with DCFS. I believe a review of the record shows the trial court had the reports *1276 of DCFS, had the benefit of all the parties' input with respect to those reports, provided each party an opportunity to present additional evidence, and made its detailed findings. The trial court's actions were not inconsistent with section 2-20(5) or section 1-5(1) of the Act. The parties were present, given an opportunity to be heard, and given all of the rights set forth in section 1-5(1) of the Act.
I would affirm the trial court's decision.