751 N.E.2d 1270 (2001)
323 Ill. App.3d 352
256 Ill.Dec. 433
In re S.P. and J.W., Minors (The People of the State of Illinois, Petitioner-Appellee,
v.
Amber Woolsey, Respondent-Appellant).
No. 4-00-0914.
Appellate Court of Illinois, Fourth District.
July 5, 2001.
*1271 Daniel B. Kennedy, Champaign, for Amber Woolsey.
John C. Piland, Champaign County State's Attorney, Urbana, Norbert J. Goetten, Director, Robert J. Biderman, Deputy Director (William C. Nichelson, of counsel), State's Attorneys Appellate Prosecutor, Springfield, for the People.
Justice MYERSCOUGH delivered the opinion of the court:
In July 1999, the State filed a two-count petition pursuant to sections 2-3(1)(a) and (1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(a), (1)(b) (West 1998)), alleging that respondent, Amber Woolsey, failed to provide her minor children, S.P. and J.W., with adequate shelter and exposed the children to unsanitary living conditions. Although the court continued the matter under supervision (CUS) until May 2, 2000, the State filed a petition to revoke CUS pursuant to section 2-20(5) of the Juvenile Court Act (705 ILCS 405/2-20(5) (West 1998)) on April 6, 2000. The trial court set the petition to revoke CUS for hearing on May 31, 2000. On May 30, 2000, however, respondent filed a motion to dismiss the petition to revoke CUS because (1) section 2-20(5) requires such a petition to be heard within 15 days of filing and (2) the State failed to call the matter for hearing within that 15-day period. The trial court denied respondent's motion to dismiss and proceeded with adjudicatory and dispositional hearings, resulting in the children being made wards of the court and their guardianship being transferred to the Illinois Department of Children and Family Services (DCFS).
On appeal, respondent only challenges the trial court's decision denying her motion to dismiss the State's petition to revoke CUS because the hearing was not held within the 15-day period proscribed by statute. We affirm.

I. BACKGROUND
Respondent is the biological mother of S.P. and J.W., born October 26, 1982, and December 29, 1984, respectively. The minors' father is deceased. DCFS received several indicated reports of abuse prior to filing the neglect petition in this case.
In July 1998, DCFS received a report, alleging that respondent had caused S.P. to have abrasions, scratches, and redness on her cheek after a physical altercation. Respondent refused services at the time of the investigation. In May 1999, DCFS received an additional report, alleging environmental neglect.
*1272 A child protective investigator (investigator) attempted to contact respondent and her children regarding the allegations of environmental neglect. Despite the investigator's numerous attempts, respondent failed to return the investigator's messages. In June 1999, the investigator was finally able to contact respondent at her residence and notify respondent that she had three days to show marked improvement in the cleanliness of the home. Respondent refused services again.
On June 11, 1999, the investigator returned to respondent's home to again find filth and debris. On July 8, 1999, the State filed a petition to have S.P. and J.W. declared neglected minors due to unsanitary living conditions under sections 2-3(1)(a) and (1)(b) of the Juvenile Court Act (705 ILCS 405/2-3(1)(a), (1)(b) (West 1998)). In November 1999, the trial court granted the CUS for a period of six months during which time the children were to remain in respondent's custody until mid-May 2000. The trial court set the matter for a May 2, 2000, status hearing regarding the CUS, more than two weeks before the six-month CUS period would have run.
On April 6, 2000, however, the State filed a petition to revoke the CUS pursuant to section 2-20(5) of the Juvenile Court Act (705 ILCS 405/2-20(5) (West 1998)), alleging that respondent violated the trial court's CUS order "in that the respondent's home is in an unsanitary condition and [DCFS] has been denied access to the respondent's home." The trial court acknowledged the State's petition to revoke the CUS at the May 2, 2000, hearing, admonished respondent as to the petition, appointed new counsel to represent her, appointed a new attorney and guardian ad litem for the children, set a hearing on the revocation petition on May 31, 2000, and continued the CUS until the revocation hearing.
On May 30, 2000, respondent filed a motion to dismiss the petition to revoke the CUS, arguing that (1) section 2-20 requires such a petition to be heard within 15 days of filing and (2) the State failed to call the matter for hearing within that 15-day period. At the May 31, 2000, hearing, the trial court denied respondent's motion to dismiss, heard evidence on the State's petition to revoke the CUS, recessed and continued the hearing on the revocation petition until June 2, 2000, and continued the CUS until the June 2, 2000, hearing.
At the June 2, 2000, hearing, the trial court reconvened the hearing on the State's petition to revoke the CUS. The trial court learned that Mary Palma (Palma) had been appointed S.P.'s guardian in October 1994. The trial court permitted the State to amend its petition for adjudication of wardship to add Palma as a party to the proceeding. As to J.W., the trial court revoked the CUS and found J.W. to be a neglected minor. The trial court also set an admonition hearing for Palma regarding the petition for adjudication of wardship as to S.P. and set a dispositional hearing regarding J.W. for June 29, 2000. The trial court entered its written adjudicatory order finding J.W. neglected on June 21, 2000.
On June 29, 2000, the trial court admonished Palma of the nature of the allegations found in the petition for adjudication of wardship and the possible consequences of the proceedings. The trial court continued the adjudicatory hearing as to S.P. until August 14, 2000.
Also at the June 29, 2000, hearing, the trial court held a dispositional hearing regarding J.W. The trial court found that J.W. was a neglected minor and made the minor a ward of the court. The trial court appointed DCFS as J.W.'s guardian but *1273 permitted J.W.'s custody to remain with respondent.
On August 14, 2000, Palma waived her right to an adjudicatory hearing regarding S.P. Therefore, the trial court found S.P. neglected as alleged and set the cause for dispositional hearing on September 5, 2000. On August 24, 2000, the trial court entered its adjudicatory order memorializing its finding that S.P. was neglected.
On September 5, 2000, the trial court conducted a dispositional hearing regarding S.P. The trial court found that S.P. was a neglected minor and made S.P. a ward of the court. The trial court appointed DCFS as S.P.'s guardian and removed custody from Palma and transferred custody to respondent. On September 18, 2000, the trial court filed its dispositional order regarding both S.P. and J.W. This appeal followed.
II. ANALYSIS
Respondent argues that the trial court erred in denying her motion to dismiss the State's petition to revoke the CUS because no hearing was held within the 15-day period contained within section 2-20(5) of the Juvenile Court Act. The State argues that the 15-day limitation found in section 2-20(5) is only directory and not mandatory and, therefore, not jurisdictional in nature. Alternatively, the State argues that, even if the 15-day period is mandatory, respondent forfeited this argument by participating in a hearing after the 15-day period elapsed and failing to object to the continuance of the revocation hearing for more than 50 days.
The issues of first impression before this court are (1) whether a trial court must dismiss a petition to revoke the CUS when a hearing on such petition is not held within 15 days from the date of filing the petition, and (2) whether a respondent forfeits the benefit of that limitation period by participating in a hearing after the 15-day period elapsed.
Section 2-20(5) states:
"If a petition is filed charging a violation of a condition of the continuance under supervision, the court shall conduct a hearing. If the court finds that such condition of supervision has not been fulfilled[,] the court may proceed to findings and adjudication and disposition. The filing of a petition for violation of a condition of the continuance under supervision shall toll the period of continuance under supervision until the final determination of the charge, and the term of the continuance under supervision shall not run until the hearing and disposition of the petition for violation; provided where the petition alleges conduct that does not constitute a criminal offense, the hearing must be held within 15 days of the filing of the petition unless a delay in such hearing has been occasioned by the minor, in which case the delay shall continue the tolling of the period of continuance under supervision for the period of such delay." (Emphasis added.) 705 ILCS 405/2-20(5) (West 1998).
Interestingly, this or similar language appears in at least three other statutes, none of which have been interpreted regarding the 15-day period. See 705 ILCS 405/3-21, 4-18, 5-615 (West 1998).
The parties interpret the 15-day period as applying whenever a petition to revoke the CUS is filed. We disagree. The 15-day time period applies only where a petition to revoke the CUS has been filed, no criminal conduct is alleged, and the hearing on that petition is not held prior to the CUS lapsing, i.e., the hearing on the petition to revoke is only required to be held within 15 days from the filing of the petition *1274 where an automatic tolling of the CUS period applies.
The preeminent rule of statutory construction is to give effect to the language and intent of the legislature. People v. Hicks, 164 Ill.2d 218, 222, 207 Ill.Dec. 295, 647 N.E.2d 257, 259 (1995). The most reliable indicator of legislative intent is the language of the statute. In re S.G., 175 Ill.2d 471, 480, 222 Ill.Dec. 386, 677 N.E.2d 920, 924 (1997). To effectuate a proper construction of a statute, words used in the statutory provision should be given their plain and ordinary meaning. Hicks, 164 Ill.2d at 222, 207 Ill.Dec. 295, 647 N.E.2d at 259. A court must, therefore, consider every part of the statute together and give every word or phrase some reasonable meaning. In re E.B., 314 Ill.App.3d 712, 717, 247 Ill.Dec. 262, 731 N.E.2d 1270, 1274 (2000). Statutes are to be construed so that no clause is superfluous or void. E.B., 314 Ill.App.3d at 717, 247 Ill.Dec. 262, 731 N.E.2d at 1274.
Section 2-20(5) provides that the initial filing of a petition to revoke the CUS shall toll the CUS and the terms of the CUS shall not run until the disposition of the revocation petition. 705 ILCS 405/2-20(5) (West 1998). This language suggests that, in certain circumstances, a fixed period of CUS may lapse without action from the trial court.
In In re D.P., 165 Ill.App.3d 346, 347-48, 116 Ill.Dec. 442, 519 N.E.2d 32, 33-34 (1988), we interpreted nearly identical language from the Juvenile Court Act regarding juvenile probation revocation. At that time, the last sentence of section 5-3(3)(c) provided:
"The filing of a petition for violation of a condition of probation or of conditional discharge shall toll the period of probation or of conditional discharge until the final determination of the charge, and the term of probation or conditional discharge shall not run until the hearing and disposition of the petition for violation." Ill.Rev.Stat., 1986 Supp., ch. 37, par. 705-3(3)(c) (as amended, see 705 ILCS 405/5-720(1) (West 1998)).
We found this language to indicate that "[a] period of probation expires at the end of its specific term." D.P., 165 Ill.App.3d at 348, 116 Ill.Dec. 442, 519 N.E.2d at 34. When the legislature uses identical language to prescribe identical provisions, absent evidence of a contrary intent, the only logical conclusion to be drawn is that the legislature intended that the two provisions have the same meaning and be interpreted identically. City of Tuscola v. Illinois State Labor Relations Board, 314 Ill.App.3d 731, 736, 247 Ill.Dec. 729, 732 N.E.2d 784, 788 (2000). Therefore, under section 2-20(5), a fixed period of CUS may lapse on its own terms without intervention from the trial court.
However, section 2-20(5) provides a mechanism to automatically toll the CUS when it could potentially lapse after a petition to revoke has been filed but before a hearing and resolution can occur. Specifically, section 2-20(5) states that the CUS shall be tolled, "provided where the petition alleges conduct that does not constitute a criminal offense, the hearing must be held within 15 days of the filing of the petition." 705 ILCS 405/2-20(5) (West 1998). We conclude that the within-15-day hearing requirement on petitions to revoke CUS that allege no criminal conduct is applicable only in situations where the CUS would lapse by its own terms while the petition to revoke is pending, i.e., when the automatic tolling provision is needed to continue CUS.
For example, hypothetically, on January 1, 2001, a trial court continues the CUS until June 1, 2001, an interval of six months. On May 28, 2001, the State files *1275 a petition to revoke the CUS, alleging a noncriminal violation of the CUS terms. The trial court sets a hearing on the petition to revoke for June 6, 2001. This hearing date, however, falls outside the six-month CUS period. In such a situation, the period of the CUS is tolled until the June 6, 2001, hearing and disposition of the revocation petition because the trial court held its hearing on the revocation petition within 15 days after the respondent filed the petition. In this hypothetical situation, the 15-day time period within which a revocation hearing must be held is applicable only to toll the soon-to-be or recently expired CUS until the trial court resolves the revocation petition. Under the plain language of section 2-20, if the CUS was not in danger of lapsing, the 15-day period would have no relevance or application.
Further, had the legislature intended to require trial courts to hold hearings on revocation petitions within 15 days in every instance, it would have said so. Indeed, the legislature did just that in section 5-720(2), which provides:
"(2) [If a revocation petition is filed, t]he court shall conduct a hearing of the alleged violation of probation or of conditional discharge. The minor shall not be held in detention longer than 15 days pending the determination of the alleged violation." 705 ILCS 405/5-720(2) (West 1998).
This language has been interpreted as requiring the trial court to conduct a hearing on a probation revocation petition within 15 days after the juvenile is detained. People v. Dean, 52 Ill.App.3d 383, 385, 10 Ill.Dec. 31, 367 N.E.2d 419, 421 (1977) (interpreting section 5-3(4) (Ill.Rev.Stat.1975, ch. 37, par. 705-3(4)), the precursor to section 5-720(2) (705 ILCS 405/5-720(2) (West 1998)), which used identical language for this section). Section 2-20(5) does not contain similar language.
In the case at bar, at the November 19, 1999, hearing, the trial court granted a six-month period of the CUS until May 19, 2000, and scheduled a May 2, 2000, status hearing to review the respondent's progress and determine whether to extend the period of the CUS. On May 2, 2000, the trial court conducted a hearing and extended the period of the CUS until May 31, 2000, the date on which the trial court adjudicated the petition to revoke the CUS. Therefore, the trial court's original CUS order was formally continued by order of the trial court and would never have automatically lapsed during the pendency of the State's petition to revoke. Consequently, the automatic tolling provision of section 2-20(5) was inapplicable to respondent's situation. Because the 15-day hearing requirement is invoked only when the automatic tolling provision applies, the trial court was not required under section 2-20(5) to conduct a hearing on the State's petition to revoke within 15 days of the filing of that petition. Our resolution of this issue makes it unnecessary to address any issues of forfeiture.

III. CONCLUSION
For the reasons stated, we affirm the trial court's judgment.
Affirmed.
McCULLOUGH and KNECHT, JJ., concur.