NO. 4-00-0895

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

GENE ARNETT, JERMAINE CARPENTER 

(CARTER), TERRY JOHNSON, JERRICO

SMALLEY, MICHAEL WILLIAMS, and STEVEN R. WUEBBELS, Individually and on Behalf of All Others Similarly Situated,

          Plaintiffs-Appellants,

          v.

DONALD J. SNYDER, JR., in his official

capacity as Director of the Illinois Department of Corrections,

          Defendant-Appellee. 

)

)

)

)

)

)

)

)))))

  Appeal from

  Circuit Court of 

  Sangamon County

  No. 99MR407

  Honorable

  Thomas R. Appleton,

  Judge Presiding.

______________________________________________________________

JUSTICE TURNER delivered the opinion of the court:

In October 1999, plaintiffs, Gene Arnett, Jermaine Carpenter (Carter), Terry Johnson, Jerrico Smalley, Michael Williams, and Steven R. Wuebbels, all inmates at Tamms Correctional Center (Tamms), filed a two-count complaint against defendant, Donald J. Snyder, Jr., the Director of the Illinois Department of Corrections (DOC), seeking to enjoin Tamms' discipline policy known as "controlled-feeding status."  Plaintiffs' complaint alleged the policy violated section 3-8-7 of the Unified Code of Corrections (Unified Code) (730 ILCS 5/3-8-7 (West 1996) (effective until June 1, 1997)), the eighth amendment (U.S. Const., amend. VIII), and the due process clause of the fourteenth amendment (U.S. Const., amend. XIV).  In January 2000, defendant filed a motion for summary judgment, and in March 2000, plaintiffs filed a motion for judgment on the pleadings.  After a hearing, the trial court granted defendant's motion and denied plaintiffs'.  

On appeal, plaintiffs assert the trial court erred in granting summary judgment in favor of defendant.  We affirm.

I. BACKGROUND

In June 1999, George Welborn
, warden of Tamms, issued warden's bulletin No. 99-88 (hereinafter the Bulletin), establishing the "controlled-feeding status."  "Controlled-feeding status" consists of a combination of regular food items prepared in a loaf served only with water for breakfast, lunch, and dinner.  No utensils are provided with the "meal loaf," and no other food or liquids are provided.  An inmate may be placed on controlled-feeding status for the following behavior:  throwing food items, utensils, containers, or trays; failure to return or properly dispose of uneaten food, drink items, serving utensils, or trays; obstruction or prevention of the closure of food passage; spitting; throwing; making weapons; or improper disposal of human waste discharge or fluids.  The first placement on controlled-feeding status is for 72 hours, consisting of nine meals.  Any subsequent violation may result in a six-day placement.  At the end of each six-day period, a regular, medical, or religious meal is to be served for 24 hours.

In October 1999, plaintiffs filed a two-count complaint seeking to enjoin Tamms' use of the controlled-feeding status.  Plaintiffs filed the complaint as a class action, but the trial court never certified the class.  In December 1999, plaintiffs filed a motion for a preliminary injunction, attaching an affidavit of each named plaintiff.  (The trial court never specifically addressed this motion.) 

In their affidavits, plaintiffs complained they received no notice of the reason for being placed on controlled-feeding status and no hearing before being placed on the status.  However, plaintiffs did receive the Bulletin prior to being placed on controlled-feeding status.  Johnson noted his violation was expunged after the status ended.  Plaintiffs were placed on controlled-feeding status for violations such as misuse of property, disobeying an order, assaulting an officer, damage to property, arguing with an officer, and throwing an apple.  

Plaintiffs compared the meal loaf to dog food and all claimed they were unable to eat it.  All of the plaintiffs complained of headaches, dizziness, stomach pains, and fatigue due to their failure to eat.  Moreover, Smalley and Wuebbels complained they were unable to take medications while on controlled-feeding status because of their lack of eating.

In January 2000, defendant filed a motion for summary judgment and a supporting memorandum, asserting the policy did not violate state law, the eighth amendment, or due process.  Defendant also raised sovereign immunity.  Attached to the motion were the affidavits of Welborn and Bonnie Sullivan, a licensed dietician and Tamms' dietary manager.

In his affidavit, Welborn explained the controlled-feeding status as set forth in the Bulletin.  In her affidavit, Sullivan stated she developed the meal loaf recipe by modifying the recipes of dieticians of correctional facilities in other states.  Meal loaves are not served to inmates with dietary restrictions and a vegan meal loaf is provided for inmates who, for religious reasons, request a vegan diet.  According to Sullivan, three servings of either type of meal loaf exceed the minimal nutritional and caloric requirements established by the National Academy of Sciences, except for vitamin B-12.  However, the meal loaf's vitamin B-12 deficiency is not harmful because the body produces vitamin B-12.  The components used in the meal loaf are equivalent to the components served to the general-population inmates.

Sullivan further stated, between November 1998 and November 1999, four plaintiffs had gained weight, one refused to be weighed, and one lost three pounds.  Sullivan also attached to her affidavit the recipe for meal loaf.  Meal loaf consists of ground beef, spinach, carrots, vegetarian beans, applesauce, tomato paste, potato flakes, bread crumbs, dry milk powder, and garlic powder.  See Appendix A.  Vegan meal loaf has a similar recipe with ground beef and milk powder omitted and margarine added.  See Appendix A.

In March 2000, plaintiffs filed a response to defendant's motion, attaching the same affidavits submitted with the motion for a preliminary injunction.  In their response, plaintiffs assert each of them lost weight while on the controlled-feeding status.  However, plaintiffs admit they were not weighed immediately before or after being placed on the controlled-feeding status.  Plaintiffs also attached their medical records, which indicate they complained to medical personnel about the meal loaf.

Also, in March 2000, plaintiffs filed a motion for judgment on the pleadings pursuant to section 2-615(e) of the Code of Civil Procedure (735 ILCS 5/2-615(e) (West 2000)), asserting no issues of fact exist and the facts indicate the controlled-feeding-status policy violates section 3-8-7 of the Unified Code.  

In September 2000, the trial court granted defendant's motion for summary judgment and denied plaintiffs' motion for judgment on the pleadings.  This appeal followed.

II. ANALYSIS

A. Preliminary Issues

In his appellee brief, defendant asserts the plaintiffs’ affidavits violate Supreme Court Rule 191(a) (145 Ill. 2d R. 191(a)), and plaintiffs failed to include a standard of review in their brief in violation of Rule 341(e)(3) (177 Ill. 2d R. 341(e)(3)).

1. 
Affidavits

Defendant contends plaintiffs’ affidavits violate Rule 191(a) because the affidavits set forth opinions, not facts.  In Illinois, the general rule is the sufficiency of affidavits cannot be tested for the first time on appeal where no objection was made by a motion to strike, or otherwise, in the trial court.  
Kolakowski v. Voris
, 83 Ill. 2d 388, 398, 415 N.E.2d 397, 402 (1980).  Accordingly, defendant has forfeited this argument by failing to attack the affidavits in the trial court.  See 
Kolakowski
, 83 Ill. 2d at 398, 415 N.E.2d at 402.

2. 
Standard
 
of
 
Review

Defendant is correct that plaintiffs failed to state the applicable standard of review.  However, our review is not hindered by plaintiffs’ error (see 
Moomaw v. Mentor H/S, Inc.
, 313 Ill. App. 3d 1031, 1035, 731 N.E.2d 816, 820 (2000)), and we will apply the following standard of review.

Summary judgment is appropriate when the pleadings, depositions, admissions, and affidavits demonstrate no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 2000); 
Boldini v. Owens Corning
, 318 Ill. App. 3d 1167, 1169-70, 744 N.E.2d 370, 372 (2001).
  In ruling on a motion for summary judgment, the trial court must view all evidence in the light most favorable to the nonmovant.  
We review
 grants of summary judgment 
de
 
novo
.  
Boldini
, 318 Ill. App. 3d at 1170, 744 N.E.2d at 372.

B. Section 3-8-7 of the Unified Code

Plaintiffs contend the controlled-feeding status violates section 3-8-7(b)(1) of the Unified Code.  We disagree.  

We apply the version of section 3-8-7 effective prior to Public Act 89-688 (Pub. Act 89-688, §5, eff. June 1, 1997 (1996 Ill. Laws 3738, 3758-59)) because this court found Public Act 89-688 violated the single subject rule (see 
People v. Foster
, 316 Ill. App. 3d 855, 860, 737 N.E.2d 1125, 1130 (2000)).  Section 3-8-7 provides, in relevant part:  "Corporal punishment and disciplinary restrictions on diet, medical or sanitary facilities, clothing, bedding, mail[,] or access to legal material are prohibited ***."  730 ILCS 5/3-8-7(b)(1) (West 1996) (effective until June 1, 1997). 

Plaintiffs argue diet means the usual food and drink of a person, and thus section 3-8-7(b)(1) prohibits giving inmates different food from the rest of the prison population for discipline purposes.  Defendant asserts the section prohibits DOC from denying inmates nutritionally adequate food for disciplinary reasons.

Initially, we note courts give substantial weight and deference to the interpretation placed on a statute by the agency  charged with its administration and enforcement.  
Mattis v. State Universities Retirement System
, 296 Ill. App. 3d 675, 679, 695 N.E.2d 566, 569 (1998).  Courts have recognized repeatedly that a statutory interpretation by an administrative agency expresses an informed source for ascertaining legislative intent.  
Dietz v. Property Tax Appeal Board
, 191 Ill. App. 3d 468, 476, 547 N.E.2d 1367, 1372 (1989).  However, courts are not bound by the agency’s interpretation.  
Mattis
, 296 Ill. App. 3d at 679, 695 N.E.2d at 569.
 

In construing a statute, the preeminent goal is to give effect to the language and intent of the legislature.  To achieve the goal, we must give the words used in the statutory provision their plain and ordinary meaning.  Further, we must assume the legislature did not intend an absurd result.  
In re E.B.
, 314 Ill. App. 3d 712, 717, 731 N.E.2d 1270, 1274 (2000).

Plaintiffs’ interpretation of the statute produces absurd results.  Clearly, the legislature did not intend to prohibit prison officials from removing utensils from inmates who attempt to use the utensils as weapons or to throw feces with them as long as the inmates are provided nutritionally comparable food that does not require utensils
.  For example, it would also be an absurd result to prohibit officials from not serving peas to an inmate who has thrown them.  Further, in instances of an inmate’s misbehavior with food or food paraphernalia, it would be incongruous to prohibit officials from providing a less desirable meal as punishment at an institution such as Tamms where few options of punishment exist.  Thus, we find defendant’s interpretation of the statute is the appropriate one.

This conclusion is supported by section 3-7-2(d) of the Unified Code (730 ILCS 5/3-7-2(d) (West 1996) (effective until June 1, 1997)
)
.  Under section 3-7-2(d)
, DOC facilities and institutions must provide inmates with a wholesome and 
nutritional
 
diet
 at regularly scheduled hours, indicating the legislature’s intent to ensure inmates receive proper nutrition.

Plaintiffs assert the trial court ignored 
People v. Joseph
, 105 Ill. App. 3d 568, 434 N.E.2d 453 (1982), the only case to find a diet was unauthorized under section 3-8-7(b)(1) of the Unified Code.  However, 
Joseph
 is consistent with our interpretation of section 3-8-7 because the bread and water diet was nutritionally inadequate.  See 
Joseph
, 105 Ill. App. 3d at 571, 434 N.E.2d at 456
.

Here, plaintiffs admit the meal loaf is nutritionally adequate but argue it is inedible.  However, the inmates do not contend that any ingredients in the meal loaf (meat, vegetables, fruit, potatoes, grains, dairy products, and spices) are inedible.  Moreover, plaintiffs have not contended the meal loaves are spoiled, moldy, or otherwise contaminated.  Thus, plaintiffs presented no basis for their contention that to combine the edible ingredients in the meal loaf makes the loaf inedible.

Accordingly, we find the controlled-feeding status does not violate section 3-8-7 of the Unified Code. 

C. Eighth Amendment

Plaintiffs next argue the controlled-feeding status violates the eighth amendment's prohibition against cruel and unusual punishment.  A prison official violates the eighth amendment only when (1) the deprivation alleged is sufficiently serious under an objective standard; and (2) his act was with a sufficiently culpable state of mind under a subjective standard.  
Wilson v. Seiter
, 501 U.S. 294, 298, 115 L. Ed. 2d 271, 279, 111 S. Ct. 2321, 2324 (1991). 
 

The objective prong cannot be satisfied by merely showing a routine discomfort inherent in the prison setting.  
Johnson v. Lewis
, 217 F.3d 726, 731 (9th
 Cir. 2000)
.  The deprivation must be so serious as to deny the minimal civilized measure of life’s necessities.  
Rhodes v. Chapman
, 452 U.S. 337, 347, 69 L. Ed. 2d 59, 69, 101 S. Ct. 2392, 2399 (1981).  The eighth amendment requires only that prisoners receive food adequate to maintain health; it need not be tasty or aesthetically pleasing.  
LeMaire v. Maass
, 12 F.3d 1444, 1456 (9th
 Cir. 1993).
  Under the subjective prong, a prison official cannot be found liable unless he knows of and disregards an excessive risk to inmate health or safety.  
Farmer v. Brennan
, 511 U.S. 825, 837, 128 L. Ed. 2d 811, 825, 114 S. Ct. 1970, 1979 (1994). 

In support of their argument, plaintiffs rely on the Supreme Court’s 
Hutto v. Finney
, 437 U.S. 678, 57 L. Ed. 2d 522, 98 S. Ct. 2565 (1978), and the Eighth Circuit’s 
Hazen v. Pasley
, 768 F.2d 226 (8th
 Cir. 1985).  However, we note in both cases the appellant did not challenge the district court’s finding the inmate diet was unconstitutional, and thus neither reviewing court specifically addressed the issue. 

In 
Hutto
, 437 U.S. at 683, 57 L. Ed. 2d at 529, 98 S. Ct. at 2569,
 the diet at issue consisted of grue, a substance containing meat, potatoes, oleo, syrup, vegetables, eggs, and seasoning.  Grue provided the prisoners with fewer than 1,000 calories, and practically all inmates were losing weight while on it.  
Hutto
, 437 U.S. at 683-84, 57 L. Ed. 2d at 529-30, 98 S. Ct. at 2569-70.
  In finding the grue diet unconstitutional, the district court relied on an earlier opinion by the Eighth Circuit.  
Finney v. Hutto
, 410 F. Supp. 251, 277 (E.D. Ark. 1976), 
aff'd
, 548 F.2d 740 
(8th
 Cir. 1977), 
aff'd
, 437 U.S. 678, 57 L. Ed. 2d 522, 98 S. Ct. 2565 (1978).  

The Eighth Circuit found the grue diet’s administration indicative of the prison officials’ awareness of possible dietary insufficiencies and then emphasized a fundamental difference existed between depriving an inmate of privileges he may enjoy and depriving him of the basic necessities of human existence
.  
Finney v. Arkansas Board of Correction
, 505 F.2d 194, 207 (8th
 Cir. 1974).  Under the grue diet, the inmate received one full meal every three days and six consecutive full meals every 14 days.  A thorough physical examination was performed after 14 days, and if a normal diet was dictated, the inmate was taken off the grue diet.  
Arkansas Board of Correction
, 505 F.2d at 207.
  

In 
Hazen
, the district court found a diet unconstitutional because the diet’s caloric deficiency produced notable weight loss and mildly diminished the inmate’s health.  
Hazen
, 768 F.2d at 228 n.2.  The facts do not indicate the nature of the diet.

Plaintiffs contend the meal loaf is more similar to the diets in 
Hutto
 and 
Hazen
 than to the nutraloaf diet in 
LeMaire
, relied on by the trial court.  Nutraloaf is made from blending a variety of foods from normal prison meals and baking them into a loaf.  While not particularly appetizing, nutra­loaf exceeded an inmate’s daily requirements of calories, protein, and vitamins.  Under prison regulations, the nutra­loaf was given to inmates for a maximum of seven days and for only food-related offenses (the court did note inmates were frequently given nutraloaf for nonfood-related offenses).
  
LeMaire
, 12 F.3d at 1455.
  

The court found the nutra­loaf diet did not satisfy either prong of the two-part test and thus did not violate the eighth amendment.
  
LeMaire
, 12 F.3d at 1456.  As to the objective pron
g, the court held the temporary nutraloaf diet did not deny the minimal civilized measure of life’s necessities, falling short of the threshold level of deprivation.  In distinguishing 
Hutto
’s grue diet, the court noted the inmate
 gained weight and was adequately fed. 
  Regarding the subjective prong, no evidence was presented indicating the officials imposing nutraloaf were either (1) deliberately indifferent to the inmate’s health or welfare or (2) imposing the diet maliciously or sadistically for the purpose of causing harm.  
LeMaire
, 12 F.3d at 1456
.

Here, plaintiffs have conceded the meal loaf is nutritionally adequate.  Thus, unlike the inmates in 
Hutto
 and 
Hazen
, prison officials have not deprived plaintiffs of their daily nutritional requirements.  The eighth amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing.  
LeMaire
, 12 F.3d at 1456; see also 
Breazil v. Bartlett
, 998 F. Supp. 236, 242 (W.D.N.Y. 1997) (no violation of eighth amendment as long as the inmate receives nutritionally adequate food that does not present an imminent health risk)
.
  Moreover, plaintiffs all stated they refused to eat the meal loaf.  Thus, any weight loss cannot be attributed to a nutritional deficiency of the meal loaf.  Further, plaintiffs were on the meal loaf diet for short periods (a maximum of 6 days followed by 24 hours of normal meals).  See 
Adams v. Kincheloe
, 743 F. Supp. 1385, 1391-92 (E.D. Wash. 1990).  
Because the meal loaf is nutritionally adequate, the temporary meal loaf diet does not deny the minimal civilized measure of life’s necessities.

Additionally, plaintiffs did not present any evidence to indicate the prison officials were deliberately indifferent to plaintiffs’ health or welfare or that they were maliciously and sadistically imposing the meal loaf as a sanction with the intent to cause harm as required to fulfill the subjective prong.  See 
LeMaire
, 12 F.3d at 1456
; 
Breazil
, 998 F. Supp. at 242.  However, we emphasize, under the Bulletin,
 meal loaf diet is to be imposed only for food-related offenses.   

Accordingly, the meal loaf diet does not violate the eighth amendment protection against cruel and unusual punishment. 

D. Due Process

Last, plaintiffs argue the failure to hold a hearing before placing an inmate on controlled-feeding status violates the due process clause of the fourteenth amendment.

Under certain circumstances, a state may create a liberty interest protected by the due process clause.  
Sandin v. Conner
, 515 U.S. 472, 483-84, 132 L. Ed. 2d 418, 428-29, 115 S. Ct. 2293, 2299-3000 (1995).
  However, in the case of prisoners, those interests will generally be limited to freedom from restraint, that imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.  
Sandin
, 515 U.S. at 484, 132 L. Ed. 2d at 430, 115 S. Ct. at 2300.  In dealing with a prison’s hostile environment, state officials need flexibility in fine-tuning of the ordinary incidents of prison life.  
Sandin
, 515 U.S. at 483, 132 L. Ed. 2d at 429, 115 S. Ct. at 2299.
  

Under the 
Sandin
 analysis, plaintiffs do not have a protected liberty interest in not being placed on the meal loaf diet
.  Losing the ability to choose one's meal is a consequence of imprisonment, and thus the Bulletin does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life.  Accordingly, prison officials did not have to provide due process before placing the inmates on the meal loaf diet. 

Our conclusion is supported by the Supreme Court’s abandonment of the 
liberty-interest methodology established in 
Hewitt v. Helms
, 459 U.S. 460, 74 L. Ed. 2d 675, 103 S. Ct. 864 (1983).  
Sandin
, 515 U.S. at 482-83, 132 L. Ed. 2d at 428-29, 115 S. Ct. at 2299-300
.
  The 
Hewitt
 approach had led courts to inject themselves deeply in the day-to-day management of prisons and to second-guess essentially prison managerial decisions.  
Sandin
, 515 U.S. at 482, 132 L. Ed. 2d at 429, 115 S. Ct. at 2299
; 
Ashley v. Snyder
, 316 Ill. App. 3d 1252, 1259, 739 N.E.2d 897, 903 (2000).
  One such example of this injection highlighted by the Supreme Court was 
United States v. Michigan
, 680 F. Supp. 270, 277 (W.D. Mich. 1988), where the court found a liberty interest in not being placed on a food loaf diet.  See 
Sandin
, 515 U.S. at 483, 132 L. Ed. 2d at 429, 115 S. Ct. at
 2300;
 
Ashley
, 316 Ill. App. 3d at 1259, 739 N.E.2d at 903.
 

III. CONCLUSION

Accordingly, we affirm the trial court's grant of summary judgment.

Affirmed.

McCULLOUGH, J., concurs.

MYERSCOUGH, J., specially concurs in part and dissents in part.

No. 4-00-0895 Appendix A

The record contains the following recipes:

Single Meal Loaf Recipe

This recipe must be followed without substitution or variation in procedure.  Any such change could effect the nutrient content.

2 oz Ground Beef

Brown off in kettle and drain thoroughly

4 oz Canned, Chopped Spinach

4 oz Canned Carrots, Diced

4 oz Vegetarian Beans

Open and drain all vegetables well

4 oz Applesauce 

1 oz Tomato Paste

1/2 cup Potato Flakes

1 cup Bread Crumbs

2 oz Dry Milk Powder

1 tsp Garlic Powder or Flakes

Combine beef and vegetables.  Gradually blend in remaining ingredients until well combined.  Mixture should be stiff but moist enough to spread.  Each loaf should weigh 1 1/2 pounds precooked weight and be scaled to insure proper weight.  Place mixture into a loaf pan that has been sprayed with pan release and lined with filter paper.

Each loaf should bake at 300 degrees Fahrenheit in convec-tion/ste­am oven for approximately 40 minutes or until the loaf reaches 155 degrees internal temperature.

Vegan Recipe

4 oz Canned, Chopped Spinach

4 oz Canned Carrots, Diced

8 oz Vegetarian Beans

Open and drain all vegetables well

4 oz Applesauce

1 oz Tomato Paste

1/2 cup Potato Flakes

1 cup Bread Crumbs

1 T Margarine

1 tsp Garlic Powder or Flakes

Combine drained vegetables.  Gradually and gently blend in remaining ingredients until well combined but do not over beat.  Mixture should be stiff but moist enough to spread.  Each loaf should weigh 1 1/2 pounds precooked weight and be scaled to insure proper weight.  Place mixture into a loaf pan that has been sprayed with pan release and lined with filter paper.

Each loaf should bake at 300 degrees Fahrenheit in convec-tion/ste­am oven for approximately 40 minutes or until the loaf reaches 155 degrees internal temperature
.

JUSTICE MYERSCOUGH, specially concurring in part and dissenting in part:

I respectfully concur in part and dissent in part.  I agree that defendant forfeited any objection to appellant's affidavits.  I disagree with the majority's finding that the controlled-feeding status utilizing meal loaf as punishment does not violate section 3-8-7(b)(1) of the Unified Code.  

Inmates are placed in prison as a punishment.  Inmates have no choice over what they are fed.  Moreover, controlled-feeding status appears to be a legitimate method of behavior modification.  However, the legislature has unequivocally prohibited disciplinary restrictions on diet.

"Corporal punishment and disciplinary restrictions on diet, medical or sanitary facilities, clothing, bedding, mail[,] or access to legal materials are prohibited ***."  730 ILCS 5/3-8-7(b)(1) (West 1996) (effective until June 1, 1997).

If DOC wishes to use meal loaf as a form of punishment, DOC must seek a change in the statutory language.

This statute has been amended since it was promulgated.  Prior to February 1, 1978, the statute provided for some limited disciplinary restrictions on certain necessities and privileges, but not diet.

"Corporal punishment and disciplinary restrictions on diet are prohibited.  Disciplinary restrictions on clothing, bedding, mail, visitations, the use of toilets, washbowls, showers[,] and the prison's library of legal materials shall be imposed only for abuse of such privileges or facilities ***." Ill. Rev. Stat. 1977, ch.38, par. 1003-8-7(b).  

Even though the legislature provided for some limited disciplinary restrictions, the legislature has never allowed disciplinary restrictions on diet.  Moreover, it is anomalous to permit DOC to restrict an inmate's diet when a trial court is prohibited from imposing similar restrictions.  See 
Joseph
, 105 Ill. App. 3d at 571, 434 N.E.2d at 455 (trial court sentenced defendant to seven years' imprisonment with the conditions that defendant be placed in solitary confinement for a specified period and be fed only bread and water for that period of confinement).  The appellate court in 
Joseph
 held that "[n]othing in the Code of Corrections authorizes a trial court to order [DOC] *** to feed [defendant] only bread and water.  ***  '[I]t remains primarily within the purview of the [DOC] to execute the sentence 
in
 
accordance
 
with
 
the
 
laws
 
enacted
 
by
 
the
 
legislature
 
regarding
 
the
 management, 
care
 *** of persons committed to [DOC].'"  (Emphasis added.)  
Joseph
, 105 Ill. App. 3d at 571, 434 N.E.2d at 455.  Here, DOC is charged with the care of inmates while imprisoned, and DOC must do so in accordance with the statute.  The DOC Bulletin regulation here permitting the serving of meal loaf to inmates as punishment may constitute a dietary restriction prohibited by the statute.  Notably, according to appellees, no other institution in Illinois uses this practice.  The DOC dietician also stated in her affidavit that she developed the meal loaf recipe by modifying recipes from correctional facilities in other states.

The majority contends that the statute merely prohibits DOC from denying inmates nutritionally adequate food for disciplinary reasons.  I disagree.  The statute prohibits disciplinary restrictions on diet.  "Diet" is defined as "[a] regimen, esp. of food."  Black's Law Dictionary 467 (7th ed. 1999).  "Dietary" is defined as "the kinds and amounts of food available to or eaten by an individual," and as "of or relating to a diet or the rules of a diet."  Merriam-Webster's Collegiate Dictionary 322 (10th ed. 1998).  "Restriction" is defined as "[a] limitation or qualification" (Black's Law Dictionary 1316 (7th ed. 1999)) and as "something that restricts: as *** a regulation that restricts or restrains" (Merriam-Webster's Collegiate Dictionary 999 (10th ed. 1998)).  These servings of the meal loaf may very well exceed the minimal nutritional and caloric requirements; however, if the meal loaf is inedible, then the inmates' diets have been limited, which amounts to a restriction on their diets.  In addition, if the meal loaf is inedible, then the inmates are not receiving the daily nutritional requirements.

In this case, the trial court granted summary judgment in favor of DOC.  However, genuine issues of material fact remain to be resolved on several issues.  Plaintiffs filed affidavits in which they state that the meal loaf is physically inedible by human beings and, as a result, plaintiffs lost weight while on the meal loaf punishment.  DOC did not submit an affidavit from anyone refuting the claims that the meal loaf was inedible or that plaintiffs had lost weight from the meal loaf regimen.  Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  735 ILCS 5/2-1005(c) (West 1998).  At a minimum, a question exists as to whether the meal loaf was edible.  If the meal loaf was inedible, then the fact that it contains the minimal nutritional and caloric requirements is irrelevant because the inmates are unable to eat the meal loaf.  Moreover, a factual question remains regarding what constitutes a "dietary restriction."  What constitutes a dietary restriction cannot be determined as a matter of law.  A factual question also remains as to whether being served a nutritionally adequate but inedible meal is a dietary restriction.  Therefore, summary judgment was improper.  I, therefore, respectfully dissent.